410 A.2d 759

**COMMONWEALTH of Pennsylvania**

v.

**Frank J. MARCONE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 10, 1979.

Decided Feb. 1, 1980.

574

Frank J. Marcone, Media, Pa. for appellant.

D. Michael Emuryan, Asst. Dist. Atty., Jean Marie Cella, Delaware Co. for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

OPINION

NIX, Justice.

Appellant, Frank J. Marcone, a member of the bar of this Court, maintains professional offices in Media, Delaware County. As a result of his failure to meet a court commitment on November 28, 1977, he was found to be in contempt and fined Four Hundred Dollars ($400.00). The fine has been paid, allegedly under threat of imprisonment. The jurisdiction of this Court was invoked pursuant to the Appellate Court Jurisdiction Act of 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(5) (Supp.1978–79). See 42 Pa.C.S.A. § 722(1) (1979 Pamphlet). Appellant's objections to the ruling of the court below may be classified under two headings. First, that the conduct was not contumacious. Second, that the procedure followed was improper. We find these objections to be without merit and affirm the judgment of sentence.

The court found that appellant was scheduled to attend the weekly call of the Criminal Trial list which was set for 9:00 a. m., Monday, November 28, 1977. Appellant was listed as counsel of record in two cases on the list for that date and was aware of his obligation to be present promptly at 9:00 a. m. Appellant did not appear at the appointed time but rather arrived at the courthouse at 12:00 noon. Appellant had previously been disciplined for failing to appear for the call of the list. The court further found that appellant made no effort to contact the presiding judge between 9:00 a. m. and 12:00 noon, although his offices were located directly across the street from the courthouse. In a letter to the court dated November 28, 1977, appellant requested a reconsideration of the order of contempt that had been entered that date. The court granted the request, subject to the condition that appellant file an appropriate petition on or before December 19, 1977. Appellant failed to

file the petition and did not offer an explanation for this omission.[1]

Although appellant, in his brief, has failed to crystallize the issues he seeks to raise in support of his claim for relief, it is apparent that he has attempted to set forth alternative positions. First, he urges that his conduct was not contemptuous and, therefore, the sanction imposed was undeserved. Second, he suggests that if we disagree with his first argument and find that his actions did constitute misbehavior, the use of summary punishment in such a case was inappropriate. Since these arguments are interrelated, we will discuss them together, rather than treating them separately.

Contempt may be of a civil or criminal character and criminal contempts are further divided into direct and indirect contempts. *Brocker v. Brocker*, 429 Pa. 513, 241 A.2d 336 (1968) *cert. denied*, 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773; *Commonwealth v. Harris*, 409 Pa. 163, 185 A.2d 586 (1962); *Phila. Marine Trade Assoc. et al. v. International Longshoremen's Assoc. Local Union No. 1291 et al. (Phila. Marine)*, 392 Pa. 500, 140 A.2d 814 (1958); *Commonwealth ex rel. Cox v. Cox*, 391 Pa. 572, 137 A.2d 779 (1958); *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956); *Simmons v. Simmons*, 232 Pa.Super. 365, 335 A.2d 764 (1975). The distinguishing characteristic between contempts which are classified as criminal and those labeled civil is that the latter has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs. Criminal contempts, on the other hand, have as a dominant purpose the vindication of the dignity and authority of the court and to protect the interests of the general public. *See United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Gompers v. Back's Stove and Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

1. In his brief appellant disputes this finding and asserts that at the Bar Association's Christmas party, a few nights before the December 19th deadline, he orally secured an extension from the judge, which was not subsequently recognized. Since this fact is not critical, we need not be concerned with its resolution.

578

There is nothing inherent in a contemptuous act or refusal to act which classifies the act as "criminal" or "civil". The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior

. . . . .

These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal. (Footnotes omitted).

*In re Martorano*, 464 Pa. 66, 77–78, 346 A.2d 22, 27–28 (1975).

*See also Commonwealth v. Charlett*, 481 Pa. 22, 391 A.2d 1296 (1978); *In re B*, 482 Pa. 471, 394 A.2d 419 (1978); *In re November 1975 Special Investigating Grand Jury* (Opinion in Support of Reversal, Nix, J., joined by Eagen, C. J., and Manderino, J.) 475 Pa. 123, 379 A.2d 1313 (1977); *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977); *Woods v. Dunlop*, 461 Pa. 35, n.2 at 40, 334 A.2d 619, n.2 at 622 (1975); *Beghian v. Beghian*, 408 Pa. 408, 184 A.2d 270 (1962).

 In this case it is undisputed that the court intended to make and did make an adjudication of criminal contempt. Thus the legitimacy of the order before us will be dependent upon a determination as to whether appellant's actions constituted a criminal contempt. As previously noted, criminal contempts are further divided into direct and indirect contempts. A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or to misbehavior so near thereto as to interfere with the immediate business of the court. *Phila. Marine, supra; Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978); *In Matter of Johnson*, 467 Pa. 552, 359 A.2d 739 (1976); *Appeal of Levine*, 372 Pa. 612, 95 A.2d 222 (1953); *Snyder's Case*, 301 Pa. 276, 152 A.

33 (1930). The essence of this classification of contempt is that the misconduct constitutes a direct affront to the dignity and authority of the court so that punishment is required to preserve the efficacy of the judicial system in the administration of justice. The gravity of the affront is thus measured by its relationship to the orderly process of the business of the court. Where that disobedience or misbehavior occurs in the actual presence of the court or has the capacity of directly affecting the proceeding then in progress, it may be properly classified as a direct or the most grievous type of contempt. All other behavior which may have a more remote impact upon the dignity of the court and its ability to fulfill its responsibilities are classified as indirect criminal contempts.

■ In keeping with the gravity of a criminal contempt, the law has long recognized the need to provide the courts with the power to impose summary punishment for such conduct in appropriate situations. *Commonwealth v. Davis*, 258 Pa.Super. 224, 392 A.2d 766 (1978); *Commonwealth v. Garrison, supra; Commonwealth v. Stevenson*, 482 Pa. 76, 393 A.2d 386 (1978); *U. S. v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Summary action permits the court to eliminate the traditional steps involved in an adjudication, e. g., "the issuance of process, service of complaint and answer, holding of hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial." *Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717, 724 (1952). Although this is a drastic departure from our traditional view of due process, its justification in the punishment of criminal contempts was well stated by Mr. Chief Justice Taft in *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767, 773 (1925):

We think the distinction finds its reason not any more in the ability of the judge to see and hear what happens in

the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the "very hallowed place of justice," as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment constituting due process that the assumption that the court saw everything that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it.

Thus, with due regard to the traditional notions of due process, it is nevertheless recognized that an ordered system of justice "require[s] such a summary dealing . . . [as] a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage [to it,]. . . . " *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954). *See also Cooke v. United States, supra; Ex parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). The power to punish for contempt, including the power to inflict summary punishment, is not derived by statute but rather is a right inherent in courts and is incidental to the grant of judicial power under Article 5 of our Constitution. *Commonwealth v. Stevenson, supra; Brocker v. Brocker, supra; Commonwealth ex rel. v. Perkins,* 124 Pa. 36, 16 A. 525 (1889); *In re Attachment of Mack,* 17 Som. 221, 37 West 127 (1956); *Commonwealth v. Reap,* 27 Lack. 1 (1925). The legislature by the Act of 1836,[2] has sought to regulate the manner of the exercise of the power of summary contempt. *Snyder's Case,* 301 Pa. 276, 284, 152 A. 33, 76 (1930); *Appeal of Marks,* 144 Pa.Super. 556, 559, 20 A.2d 242, 245 (1941). Section 23 of the Act of 1836 provides:

**2.** Act of June 16, 1836, P.L. 784, §§ 23, 24, 17 P.S. §§ 2041, 2042. [Repealed and codified in substantially identical form at 42 Pa.C.S.A. §§ 4131, 4132 (1979 Pamphlet) effective June 27, 1978.]

Classification of penal contempts

The power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:

I. To the official misconduct of the officers of such courts respectively;

II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court;

III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

■ Section 24 of the Act of 1836 has been construed as limiting the power to impose a prison sentence under the previous section (section 23) to direct contempts and requiring that indirect contempts shall be "punished by fine only."[3] Phila. Marine, supra. When the Act of 1836 is read in conjunction with the Act of 1931,[4] it becomes apparent that the conduct described in section 23 of the Act of 1836 was intended to cover indirect as well as direct contempts. See Rosenberg Appeal, 186 Pa.Super. 509, 521, 142 A.2d 449, 455 (1958). The limitations provided in section 24 of the Act of 1836 merely restricts the imposition of the sanction of imprisonment to direct contempts where summary punishment is employed. Since the sanction imposed in this case was only a fine, it is not critical to our determination to ascertain whether the conduct is to be construed as having occurred within the actual or constructive presence of the court as long as it otherwise falls within the perimeters of section 23 of the Act of 1836. See e.g. In the Matter of

3. Section 24 of the Act of 1836 provides:
Punishment for contempt
The punishment of imprisonment for contempt as aforesaid shall extend only to such contempts as shall be committed in open court, and all other contempts shall be punished by fine only.

4. Act of June 23, 1931, P.L. 925, §§ 1, 2, 17 P.S. §§ 2047, 2048. Under this Act, the General Assembly has set forth indirect criminal contempts for which a sentence of imprisonment may be imposed and the procedure to be followed where such a sanction is intended.

*Johnson, supra,* 467 Pa. at 555, 359 A.2d at 741 (conduct punishable by summary punishment under subsection I of section 23 of the Act of 1836 need not be in the presence of the court).[5]

▮ With the foregoing in mind, we turn to the sufficiency of the evidence in this record. The court found that appellant had deliberately neglected a scheduled court appearance, of which he had sufficient notice, without a legitimate excuse.[6] A deliberate absence from a scheduled court proceeding, if established, would fall within the purview of the prohibition set forth under subsection II of section 23 of the Act of 1836.[7]

5. We note, however, that there is authority for finding a deliberate and unexcused absence by counsel from a scheduled court appearance to be a direct contempt. The gravamen of this type of misconduct is the absence which is witnessed by the court. In any event, it would be misbehavior which has the capacity of affecting the proceeding then in progress and thus justifying a finding of constructive presence. *In re Galloway,* 480 Pa. 1, 389 A.2d 55 (1978); *Commonwealth v. Gaston,* 460 Pa. 385, 333 A.2d 779 (1975); *In re Gates,* 156 U.S.App.D.C. 88, 478 F.2d 998 (D.C. Cir. 1973); *In re Niblack,* 155 U.S.App.D.C. 174, 476 F.2d 930 (D.C. Cir. 1973).

6. Appellant disputes the court's finding that he was not available until 12:00 noon. Under appellant's version of the facts, he was negotiating to have one of his clients, whose case was on the call list on the day in question, placed in the Accelerated Rehabilitative Disposition program. The difficulty in obtaining this disposition resulted from the opposition offered by counsel for the victim in the case. After discussions, the attorney for the victim, Brian T. Guthrie, Esquire, agreed to the proposal and arranged to meet appellant on the morning in question and to accompany him at the call of the list. Mr. Guthrie, who was traveling from Philadelphia, called appellant a few minutes before 9:00 a. m. to indicate that he, Guthrie, would be a few minutes late. Appellant states that he waited for ten minutes and then proceeded to the courthouse only to find that the list had been called and the court had adjourned. At 10:15 a. m., appellant along with Guthrie, who had arrived in the interim, returned to the courthouse and waited in the courtroom for two hours while the court handled other court matters. The court first recognized his presence at 12:00 noon. A resolution of this factual dispute is not required to reach a decision in this case. Regardless of the duration of the absence, it is conceded that appellant missed the entire proceeding which he was scheduled to attend.

7. The court below did not identify the specific subsection under section 23 pursuant to which he purportedly acted. Because we are

"Subsection II permits a court to punish 'disobedience or neglect' of its 'lawful process.' Parties must obey decrees and orders, witnesses must appear when subpoenaed, jurors must present themselves when called."

*In the Matter of Johnson, supra*, 467 Pa. at 555, 359 A.2d at 741.

While there has been a dispute as to whether an attorney, while acting in the role of an advocate on his client's behalf, should be considered an officer of the court for purposes of subsection I, *compare Commonwealth v. Stevenson, supra* 482 Pa. at 82, 393 A.2d at 389; *Commonwealth v. Garrison, supra*, 478 Pa. at 367, 386 A.2d at 977; *In the Matter of Johnson, supra*; there can be no doubt of counsel's obligation to comply with the lawful process of the court as required under subsection II.[8] Where counsel has entered an appearance and accepted the responsibility for the representation of the client, it is an essential part of that obligation to appear, prepared to proceed in all proceedings relating to the matter, for which he has received adequate notice. The obligation of counsel to his client (Pa.Code of Professional Responsibility, Canon 7 § EC 7–1) in no way

of the view that the misbehavior clearly fits within subsection II, we need not consider the applicability of the other subsections.

8. Unquestionably, there is a marked difference between the nature of counsel's responsibilities and those of other officers of the court. *Ferri v. Ackerman*, —— U.S. ——, 100 S.Ct. 402, 62 L.Ed.2d 355; *Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979). "The word 'officer' as it has always been applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term." *Cammer v. United States*, 350 U.S. 399, 405, 76 S.Ct. 456, 459, 100 L.Ed. 474, 478 (1956). *See also In re Griffiths*, 413 U.S. 717, 729, 93 S.Ct. 2851, 2858, 37 L.Ed.2d 910, 919 (1973). The difference is most pronounced where counsel is fulfilling the role of an advocate in a court proceeding. However, whether this difference is best accommodated by excluding attorneys from the definition of "officer" under subsection I or in the definition of what conduct, by such an "officer", is contemptuous, is an area in which reasonable men may differ. But, where the question is the obligation to recognize the lawful process of the court, we find no basis in the uniqueness of the role of trial counsel to exclude him from the responsibilities imposed upon all other participants in a court proceeding as required under subsection II.

diminishes counsel's duty to the court to meet scheduled court commitments. *See In re Galloway,* 480 Pa. 1, 389 A.2d 55 (1978); *In the Matter of Johnson, supra*; Pa.Code of Responsibility, Canon 5, § EC 5–1; Canon 7, § EC 7–10; ABA Standards Relating to the Administration of Criminal Justice, The Defense Function, § 4–1.2(a) (Approved Draft 1979). *See also Commonwealth v. Gaston,* 460 Pa. 385, 333 A.2d 779 (1975); *United States v. Lespier,* 558 F.2d 624 (1st Cir. 1977).

Accepting appellant's version of the incident, we are satisfied that the conduct reflected the "wrongful intent" necessary to satisfy subsection II. Appellant relies upon *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976) in support of his position that the conduct in this case was not contemptuous. In *Washington,* we noted that every failure to appear or lateness would not constitute a contempt. In that decision we stressed the necessity for establishing the existence of an intentional disobedience or neglect before a finding of contempt would be sustained for the failure to appear at the appointed time.

> Were we to accept the prosecution's argument, any person, . . . , who comes into a courtroom late can be held guilty of contempt of court, regardless of the reason for the lateness. We cannot accept such a conclusion. Unless the evidence establishes an intentional disobedience or an intentional neglect of lawful process of the court, no contempt has been proven.

*Id.,* 466 Pa. at 509, 353 A.2d at 807.

*See generally Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977); *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976); *United States v. Delahanty,* 488 F.2d 396 (6th Cir. 1973); *In re Farquhar,* 160 U.S.App.D.C. 295, 492 F.2d 561 (D.C. Cir. 1973); *Sykes v. United States,* 144 U.S.App.D.C. 53, 444 F.2d 928 (D.C. Cir. 1971).

Unlike the factual situation in *Washington,* here appellant made a deliberate choice not to be present as ordered. Nor did the facts, accepting his version of the events, present a situation of such compelling urgency as

would justify a willful disregard of a court order. There is no question that appellant was aware of the obligation and purposely failed to meet the commitment. *See In re Brown*, 147 U.S.App.D.C. 156, 454 F.2d 999 (D.C. Cir. 1971). Appellant's office was across the street from the courthouse. It would have been a simple matter for him to have appeared for the proceedings, as required, and then to have sought permission from the court to return to his office to await the arrival of the other counsel. There were many avenues open to counsel to meet the unexpected contingency he described without resorting to the necessity of deliberately disregarding his responsibility to the court. The willfulness of appellant's conduct in this instance is further demonstrated by a record which reflects a continuing course of conduct by appellant in failing to comply with the court's directive. Here appellant made a conscious decision not to appear at the appointed time even though his lateness on a prior occasion had also resulted in an adjudication of contempt and the imposition of a fine. Under these circumstances, this situation is distinguishable from *Commonwealth v. Washington, supra*, and the wrongful intent is clearly established. *In re Galloway, supra* ; *Commonwealth v. Gaston, supra* ; *In re Niblack*, 155 U.S.App.D.C. 174, 476 F.2d 930 (D.C. Cir. 1973); *In re Gates*, 156 U.S.App.D.C. 88, 478 F.2d 998 (D.C. Cir. 1973).

■ Appellant attempts to offer his heavy trial schedule in mitigation. Under the Canons of Ethics, counsel is prohibited from accepting a caseload beyond his ability to provide adequate management and supervision. Pa.Code of Professional Responsibility, Canon 6 and DR 6–101 (1977). While we are cognizant of and sympathetic to the economics of the privately retained counsel whose primary concern is the representation of those charged with minor criminal offenses, we cannot tolerate an inexcusable failure to comply with a reasonable court directive. The calendar control of modern criminal court dockets is a sophisticated opera-

tion, dependent on diverse factors for which the court must have the authority to regulate. *See generally, Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283 (1973); *United States ex rel. Carey v. Rundle*, 409 F.2d 1210 (3d Cir. 1969). Under all of the circumstances of this case, we are therefore satisfied that the conduct of appellant was contemptuous and that the use of summary punishment was justified.

The order of the court below is affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

The record clearly demonstrates that the summary criminal contempt imposed by the judge in this case was a wholly unnecessary and impermissible action. I dissent.

Appellant stands convicted of criminal contempt and has been required to pay a $400.00 fine for missing, apparently by some few minutes, the routine call of the day's trial list in the Court of Common Pleas of Delaware County. Regrettably, the majority is as unwilling as the trial judge to consider appellant's reasons for having missed the call. Majority Opinion, Ante at 764 n.5. Most unfortunate, however, is the majority's refusal to allow appellant even the fundamental procedural safeguard of an opportunity for a hearing at which to present evidence and create a record for appellate review. By condoning the summary criminal penalty in this case the majority abandons protections clearly required by fundamental principles of due process.

I acknowledge that summary contempt procedures are sometimes necessary to maintain the orderly functioning of our courts and to preserve the dignity of the judicial process. See *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); see also *Sacher v. United States*, 343

U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1951). I refuse to believe, however, that they are warranted in the circumstances of this case:

> The power to impose summary criminal contempt is available only for
>
> > "such conduct as created an open threat to the orderly procedure of the court and such flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed and punished, demoralization of the court's authority will follow."
>
> *Jessup v. Clark*, 490 F.2d 1068, 1071 (3rd Cir. 1973) (quotation marks omitted); accord, *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394–95, 69 L.Ed. 767, 773 (1925); *United States v. Marra*, supra, [482 F.2d 1196,] at 1201 [2 Cir. 1973)]. Only in such circumstances may a court subject a contemner to punishment without the procedural protections otherwise accorded the criminally accused.

*Commonwealth v. Garrison*, 478 Pa. 356, 366–67, 386 A.2d 971, 976 (1978) (plurality opinion). Surely, failure to appear at the call of the day's list is neither "an open threat" to the court nor "flagrant defiance" of the judge. Nothing in this case demonstrates the need to impose judgment of sentence on appellant without affording him a hearing or an opportunity to prepare a defense.

Traditionally summary criminal contempt has been limited to situations where the challenged conduct occurred within the presence of the court. *Bloom v. Illinois*, 391 U.S. 194, 202–205, 88 S.Ct. 1477, 1428–84, 20 L.Ed.2d 522, 529–31 (1968). In the federal courts summary criminal contempt is permitted only if the judge "certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Fed.R.Crim.P. 42(a).\* When the challenged conduct occurs in the presence

---

\* See American Bar Associaton Project on Standards for Criminal Justice, The Function of The Trial Judge § 7.1 (Approved Draft, 1972).

of the judge, summary procedures are justified because the judge is presumably able to observe and evaluate the conduct without need for further investigation or fact finding. But when the conduct does not occur in the presence of the court it is less likely that the judge possessed all relevant facts. In the latter case, it is also less likely that the conduct requires an immediate response. In such circumstances fairness requires that one whose conduct is challenged be afforded basic procedural safeguards. The majority finds primary support for its position in *Cooke v. United State*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). But as Chief Justice Taft, speaking for a unanimous Court in that case, said:

> "Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed."

Id. at 537, 45 S.Ct. at 395, quoted in *Bloom v. Illinois*, 391 U.S. 194, 205, 88 S.Ct. 1477, 1484, 20 L.Ed.2d 522, 530 (1968). I dissent from the majority's summary denial of appellant's established due process rights and would reverse judgment of sentence.