Theresa A. HIMES

v.

Charles H. HIMES.

Appeal of: John E. Nagurney, Esquire.

Superior Court of Pennsylvania.

Submitted June 16, 2003.
Filed Sept. 30, 2003.

John E. Nagurney, Meadville, appellant, pro se.

BEFORE: HUDOCK, BENDER and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 John E. Nagurney, Esquire, appeals from the December 3, 2002[1] judgment of sentence imposed after he was found in direct criminal contempt and fined $500 for having failed to appear at his client's scheduled conciliation hearing. Upon reconsideration, the fine was reduced to $200.[2]

¶ 2 Appellant argues the elements of criminal contempt[3] were not proven beyond a reasonable doubt. He also argues he was denied due process in that (1) he wasn't warned his conduct could be contumacious; (2) he wasn't given notice a criminal contempt hearing was being conducted; and (3) he was denied the opportunity to secure counsel and prepare his defense.

¶ 3 "The ability to utilize the sanction of criminal contempt allows the trial court to maintain control in his or her courtroom; however, a trial court should not use this sanction when a lesser means would suffice." *Commonwealth v. Kolansky*, 800 A.2d 937, 939 (Pa.Super.2002).

The power to punish for contempt, including the power to inflict summary punishment, is not derived by statute but rather is a right inherent in the courts and is incidental to the grant of judicial power under our Constitution. A trial court's finding of contempt will not be disturbed absent an abuse of discretion.

*Commonwealth v. Ashton (In re Donohue)*, 824 A.2d 1198, 1202 (Pa.Super.2003) (quotation and citations omitted). When reviewing a contempt conviction to determine the sufficiency of the evidence presented, an appellate court will place great reliance on the discretion of the trial judge and is limited to a determination of whether the facts support the trial court's finding. *Kolansky, supra* at 939.

¶ 4 In order to sustain a conviction for direct criminal contempt, there must be proof beyond a reasonable doubt of (1) misconduct; (2) in the presence of the court; (3) committed with the intent to

---

1. The Order finding appellant in contempt and imposing judgment of sentence was docketed December 4, 2002.

2. No appellee's brief has been filed.

3. 42 Pa.C.S.A. § 4132, **Attachment and summary punishment for contempts.**

obstruct justice; and (4) that obstructs the administration of justice. *Ashton, supra,* at 1202; *see also Williams v. Williams,* 554 Pa. 465, 721 A.2d 1072 (1998). "Misconduct is behavior that is inappropriate to the role of the actor." *Commonwealth v. Odom,* 764 A.2d 53, 54 (Pa.Super.2000) (citation omitted). Wrongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful. *Williams, supra.*

¶ 5 The record reveals appellant was counsel for husband, Charles Himes, in the underlying divorce/custody suit. Apparently, however, there was a personality conflict which caused appellant to wish to withdraw from representation. Appellant was found in contempt when he failed to follow the proper procedure to effectuate this desired end. The facts leading up to the finding of contempt are summarized succinctly by the trial court in its December 24, 2002 Memorandum granting appellant's request that the fine be reduced from $500 to $200. Trial Court Memorandum and Order, Vardaro, J., 12/24/02.

¶ 6 In that Memorandum the trial court notes that on December 2, 2002, while serving as motions judge, appellant briefly appeared in his court room to present a motion on an unrelated matter. Also sitting in the court room that entire day was Charles Himes, for whom appellant served as counsel. At the close of motions, after appellant had left the court room, Himes approached the court with a motion by appellant to be relieved (as counsel) and a letter from appellant to Himes expressing his desire to withdraw from representation. Unsure as to why Himes was presenting the motion rather than appellant, the court denied the motion and directed appellant to continue as counsel for Himes.

The next morning a child custody mediator was using the undersign's courtroom to conduct a mediation regarding the Hime's [sic] children and it was brought to the attention of the Court that [appellant] had not appeared and Mr. Himes wanted him to continue to represent him as Mr. Himes indicated in Motions Court the day before. In light of the fact that all of the parties were present for mediation except for [appellant], the Court through court staff contacted [appellant's] office by faxing a copy of the December 2, 2002, Order at A.D.2002-220 denying his request to withdraw and by telephoning his office to tell him that he was still attorney of record and would have to appear.

*Essentially, [appellant] refused to do so and he was advised by the court staff that he either had to come over and represent his client or we would hold an immediate hearing to determine whether he was in contempt for refusing to do so.*

[Appellant] delayed reacting for some period of time and as a result the mediation was adjourned and everyone who had assembled left. Mr. Himes apparently went to [appellant's] office at that point to question why he had not appeared and ultimately while we do not know what happened there [appellant] appeared for a Contempt Hearing. When he did so he was in the courtroom banging on the door from the courtroom to chambers and had to be told by court staff that that was not appropriate.

We conducted a Contempt Hearing that day, December 3, 2002[.]  . . .

Ultimately, based on [appellant's] conduct and his refusal to represent a client for whom he had appeared and not withdrawn his appearance, we found him in contempt on December 3, 2002, and entered the order at A.D.2002-220. We noted at that time that his behavior had disrupted the custody mediation pro-

ceedings to the extent that they had to be continued.

*Id.* at 2–3 (emphasis added).

█ ¶ 7 Our review of the contempt proceedings supports the trial court's finding appellant was guilty of criminal contempt. By way of explanation for his failure to appear on his client's behalf at a scheduled custody mediation hearing, appellant provided the court with detailed reasons (four pages) why he felt he could not zealously represent Himes and wished to withdraw from representation. N.T., 12/3/02, at 2–5. The court, wishing to remain focused on the issue of appellant's failure to appear, asked appellant if he were familiar with the proper way in which to seek withdrawal from representation. *Id.* at 6. The court questioned appellant's willful failure to appear on his client's behalf, despite having been required to do so by the court's denial of his motion to withdraw and informing him by the court's telephone call as to his obligation to represent Himes. Appellant then told the court his failure to appear was merely the result of a scheduling error. *Id.* at 7.

¶ 8 The court, upon hearing this explanation by counsel, found it to be incredible. The court thereupon found "It is clear that [appellant's] actions have disrupted the business of the Court and that [appellant] had notice that the Rules require him to withdraw properly or that he must appear on behalf of his client.... [W]e find counsel is in contempt and he is so adjudicated." *Id.* at 11. We agree.

¶ 9 Appellant was scheduled to appear before an officer of the court, a custody mediator, and failed to do so. His actions, or inactions, occurred "in the presence of the court." *See Odom* and *Williams, supra.* "[Appellant] made no effort to contact [the mediator] to explain that he had a sudden conflicting matter at 9:30 A.M. nor did he attempt to show up at 8:45 A.M. for

the Himes matter or to have anyone else appear at that time for him to explain the situation." Trial Court Memorandum, Vardaro, J., 2/13/03, at 11. His actions obstructed the administration of justice. It is clear to this Court that appellant's behavior in abandoning his client was inappropriate, and he reasonably should have known such conduct was wrongful. *See Odom* and *Williams, supra.* The evidence supported the court's finding of contempt, and there was no abuse of discretion by the court.

█ ¶ 10 Appellant also argues his right to due process was violated when the court conducted a contempt hearing without providing adequate notice, causing him to appear in court, "without the opportunity to retain counsel and to properly prepare a defense to all charges." Appellant's brief at 10. He also contends he should have been warned "his conduct could be contumacious." *Id.*

¶ 11 As the court stated in its December 24, 2002 Memorandum, and repeated in its 1925 Memorandum of February 13, 2003, appellant was advised he should either appear in court as scheduled or face immediate contempt proceedings. Addressing the departure from traditional due process in cases such as the one before us, our Supreme Court has noted, "[s]ummary action permits the court to eliminate the traditional steps involved in an adjudication, e.g., the issuance of process, service of complaint and answer, holding of hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial." *Commonwealth v. Marcone,* 487 Pa. 572, 579, 410 A.2d 759, 763 (1980) (quotation and citation omitted). Quoting the United States Supreme Court, the *Marcone* Court also cautioned that if the courts are denied the abilities to forgo traditional due process entitlements and

impose immediate sanctions for what it perceives to be contumacious behavior, "demoralization of the court's authority will follow." *Id. citing Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767, 773 (1925). Appellant's argument he should have been warned his failure to represent his client at a scheduled hearing could be contumacious is self-serving and denigrating as an officer of the court, not warranting reply. We conclude appellant's rights to due process were not violated by this summary proceeding.

¶ 12 Having found appellant's arguments devoid of merit, we affirm the December 3, 2002 judgment of sentence.

¶ 13 Judgment of sentence affirmed.