J-S32026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER LEOMPORRA | : | |
| | : | |
| Appellant | : | No. 1606 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 6, 2019
In the Municipal Court of Philadelphia County
Criminal Division at No(s):  MC-51-MD-0000096-2019

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 20, 2020**

Appellant, Christopher Leomporra, appeals from the judgment of sentence entered in the Philadelphia County Municipal Court,[1] following his bench trial conviction for indirect criminal contempt based on Appellant's violation of a protective order.[2]  We affirm the judgment of sentence but remand for the limited purpose of correcting clerical errors on the face of the record.

The relevant facts and procedural history of this case are as follows.  On

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 42 Pa.C.S.A. § 1123(a.1) (explaining there shall be right of appeal to Superior Court of contempt citation issued by Municipal Court judge, but appeal shall be limited to review of record).

[2] *See* 18 Pa.C.S.A. § 4955.

or around December 19, 2018, the Commonwealth charged Appellant at docket No. MC-51-CR-0000321-2019 ("docket 321-2019") with stalking and harassment.  Specifically, Appellant had contacted J.S. ("Complainant") several times in December 2018 and left her voice messages stating that Appellant would show up at her place of employment if she did not respond to him.  Complainant did not respond, and Appellant showed up at her office on December 14, 2018.  On January 4, 2019, the court set bail at $25,000.00.  The court also imposed non-monetary bail conditions in the form of a "stay-away" order and psychological evaluation.

On January 16, 2019, the court held a status hearing.  Following the hearing, the court entered a protective order specifying that Appellant refrain from contacting or intimidating Complainant either personally or by family, friends, agents or acquaintances.  Further, the order mandated that Appellant have no direct or indirect contact with Complainant, effective January 16, 2019 until final disposition of the case.  Any violation of the order would subject Appellant to penalties under 18 Pa.C.S.A. § 4955 (violation of orders), which could include a finding of contempt.[3]

The court held another hearing on January 30, 2019, at which time the Commonwealth presented testimony from Detective Michael Schlosser.

---

[3] The January 16, 2019 hearing transcript is not in the certified record.  A copy of the January 16, 2019 order is attached to the court's Pa.R.A.P. 1925(a) opinion as Exhibit "F."

Detective Schlosser testified that sometime between January 20, 2019 and January 23, 2019, while the protective order was in effect, there was a reference on one of Appellant's Facebook accounts to "Maverick" and "Charlie." Complainant informed Detective Schlosser that Appellant refers to himself and Complainant as "Maverick" and "Charlie" (characters from the movie Top Gun), and provided Detective Schlosser evidence of older posts where Appellant had referenced "Maverick" and "Charlie," which contained a direct link to Complainant's Twitter account. Detective Schlosser informed the court that as of January 23, 2019, there was still a link to Complainant's Twitter account on TalkSportsPhilly.com, a website that Appellant runs. Because the link was still active, Detective Schlosser explained that anytime Complainant posted a Tweet, it would populate to Appellant's website. The detective confirmed that Appellant had since removed the link. Nevertheless, the detective also stated that Complainant is mentioned in older posts on Appellant's website (predating the protective order), and those posts had not yet been removed. (*See* N.T. Hearing, 1/30/19, at 4-10).

The court stated that it did not recall expressly requiring Appellant to remove the older posts in the January 16, 2019 protective order, but that going forward, Appellant would have to remove any posts that reference Complainant. (*See id.* at 10-11).

On cross-examination, Detective Schlosser conceded that one of the older posts referencing Complainant was from December 2017, and that

Appellant had not engaged in any direct communication with Complainant through e-mail or social media since the January 16, 2019 protective order was in effect. (*Id.* at 11-15).

The Commonwealth argued that Appellant was in technical violation of the court's protective order and was "pushing the limits" of the order. The Commonwealth conceded that the January 16, 2019 protective order did not expressly require Appellant to deactivate all of his accounts that reference Complainant, but the Commonwealth suggested Appellant was tech-savvy enough to know he should have deactivated his accounts. Based on Appellant's alleged violations of the January 16, 2019 protective order and the "stay-away" bail condition, the Commonwealth asked the court to increase Appellant's bail.

The court declined the Commonwealth's request to increase bail but directed Appellant to remove any references or connection whatsoever to Complainant from his social media accounts/websites within the next two days. The court further restricted Appellant from using his Facebook, Twitter, or TalkSportsPhilly account. The court told Appellant that he can still connect with people through his personal e-mail account, and may post one last message on his social media accounts stating that Appellant will not have access to those sites, and directing anyone who needs to contact him to do so through Appellant's personal e-mail. (*Id.* at 31). Appellant confirmed he would comply with the court's directives.

The parties appeared before the court for another hearing on February 13, 2019. At that time, the Commonwealth confirmed that Appellant had complied with the court's January 30, 2019 directives and removed any references to Complainant from his various accounts. The Commonwealth also stated that Complainant had not reported any further contact from Appellant. The Commonwealth indicated that the detective monitoring Appellant's accounts also verified that Appellant had not posted anything related to Complainant. The Commonwealth mentioned that Appellant's TalkSportsPhilly website was still active but that Appellant had not posted anything on it.

Appellant asked the court if he could reactivate his Twitter account for one day so that Appellant would not lose his followers. According to Appellant, once you deactivate your Twitter account for 30 days, Twitter will delete all of your followers and posts. The court asked Appellant if he could simply reactivate the account and then deactivate it again in a shorter timeframe than one day. The court instructed Appellant to obtain this information and seek further court approval before the court would agree to let Appellant reactivate the account for a limited time.

On April 1, 2019, the parties appeared before the court again. The court indicated that Appellant had posted on one of his accounts in direct violation

of the court's prior order.[4]  The court said it would give Appellant a choice—

he could proceed directly to a contempt hearing, after which the court would

find Appellant in contempt for violation of its prior order; or Appellant could

stay off the internet completely for the next 30 days.  The court indicated that

after 30 days it would revisit whether Appellant was able to comply with court

directives.  Appellant agreed to stay off the internet for 30 days.  The court

specified its 30-day internet restriction as follows:

> No new taglines, no old taglines, no Instagram account,
> email account, Facebook account, or anything else that I
> haven't mentioned through electronic technology.  Let me
> just use that so there is no thought that I left something
> out.  No electronic communication of any nature either
> posting or comments directed to anyone.

(N.T. Hearing, 4/1/19, at 5).  The court then qualified its restriction, stating

Appellant could use his personal e-mail account to contact a family friend,

relative, or someone directly, but he cannot post on any public website or

forum, including TalkSportsPhilly, for 30 days.  (*Id.* at 6).  The court reiterated

that it would revisit its order in 30 days to see if Appellant deserved greater

latitude concerning his internet presence.

The parties appeared before the court again on May 6, 2019 for a

contempt hearing, due to Appellant's violation of the internet restriction.

Specifically, Appellant had posted a motivational video to his Facebook

account on April 25, 2019, in defiance of the court's order.  Defense counsel

---

[4] The court did not specify the content of Appellant's post.

conceded that as of that morning, Appellant's Facebook and Twitter accounts were also active, but counsel informed the court Appellant had not posted anything other than the motivational video. Defense counsel further informed the court that Appellant had very strong feelings about his First Amendment right to post on social media. Notwithstanding Appellant's violation of the internet restriction, defense counsel emphasized that Appellant had not targeted Complainant on social media. The Commonwealth asked the court to find Appellant in contempt and sentence him to two to four months' imprisonment.

The court indicated that it had been very clear at the April 1, 2019 hearing that Appellant was to stay off of the internet—Appellant violated the court's order by posting a video on Facebook on April 25, 2019.[5] The court stated that although Appellant had originally deactivated his social media accounts, Appellant reactivated three of his social media accounts in direct violation of the court's order. Consequently, the court found Appellant in violation of the protective order, held Appellant in contempt for violating the court's "clear directive" to stay off the internet, and sentenced Appellant to 20

---

[5] The court also mentioned that Appellant had violated the court's directives on March 29, 2019, but the court took no action on that violation. This statement is consistent with the court's comments at the beginning of the April 1, 2019 hearing.

to 40 days' imprisonment.[6]  (**See** N.T. Hearing, 5/6/19, at 30).

Appellant timely filed a notice of appeal on June 4, 2019.  On June 18, 2019, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b).  Appellant filed a preliminary concise statement on July 2, 2019, along with a request to file a supplemental concise statement once he received all relevant notes of testimony.  On October 24, 2019, the court granted Appellant's extension request.  Appellant filed a supplemental Rule 1925(b) statement on November 15, 2019.

Appellant raises the following issues for our review:

> Is not [A]ppellant's conviction and sentence pursuant to 42 Pa.C.S.[A.] § 4136 unconstitutional, as held in **Commonwealth v. McMullen**, [599 Pa. 435, 961 A.2d 842 (2008)], and therefore must not it be vacated?
>
> Did not [A]ppellant's conviction for indirect criminal contempt, based on the lower court's order prohibiting his use of the entire internet for 30 days, violate his First Amendment rights under the Federal Constitution and Article I, § 7 of the Pennsylvania Constitution, inasmuch as a total ban on internet use was overbroad and was not narrowly tailored to serve the underlying purpose of preventing [A]ppellant's contact with the complainant?
>
> Did not [A]ppellant's conviction for indirect criminal contempt, based on the lower court's order prohibiting his use of the internet for 30 days, violate his rights to Due Process under the United States and Pennsylvania Constitutions, inasmuch as the lower court's order imposed

_____

[6] Appellant's current conviction and sentence are docketed at MC-51-MD-0000096-2019 ("docket 96-2019").  The sentencing order also indicates that Appellant was subject to immediate parole after 20 days.

an impermissible nonmonetary condition of bail under Pa.R.Crim.P. 524(C)(2) and 527, as it was not reasonably necessary to ensure [A]ppellant's compliance with the conditions of his release on bail, namely to have no contact with the complainant?

(Appellant's Brief at 4).

In his first issue, Appellant asserts the court convicted him of contempt under 42 Pa.C.S.A. § 4136 (rights of persons charged with certain indirect criminal contempts). Appellant argues that our Supreme Court declared Section 4136 unconstitutional in **McMullen**. Appellant acknowledges the court's statement in its Rule 1925(a) opinion that the docket entries referencing Section 4136 are mistaken, because the trial court asserts it found Appellant in contempt for violation of a protective order under 18 Pa.C.S.A. § 4955. Nevertheless, Appellant emphasizes that he was not charged with an offense under Section 4955.

Appellant further claims that the court did not find him in contempt for violating the original "stay-away" order, which was imposed as a non-monetary bail condition. Likewise, Appellant maintains that his contempt conviction did not involve violation of the January 16, 2019 protective order. Rather, Appellant contends the court convicted him of contempt based solely on his failure to comply with the court's wholly separate April 1, 2019 internet restriction. Consequently, Appellant insists that Section 4955 is inapplicable, and his conviction falls under Section 4136, which our Supreme Court declared is unconstitutional.

- 9 -

Moreover, Appellant complains the court was restricted to imposing a fine for Appellant's contemptuous conduct, under 42 Pa.C.S.A. § 4133, and the court exceeded its sentencing authority by imposing a term of imprisonment. Appellant concludes his conviction and sentence under Section 4136 are illegal, and this Court must grant appropriate relief. We disagree.

The Crimes Code governs protective orders as follows:

### § 4954. Protective orders

Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence, which may include hearsay or the declaration of the prosecutor that a witness or victim has been intimidated or is reasonably likely to be intimidated, issue protective orders, including, but not limited to, the following:

(1) An order that a defendant not violate any provision of this subchapter or section 2709 (relating to harassment) or 2709.1 (relating to stalking).

(2) An order that a person other than the defendant, including, but not limited to, a subpoenaed witness, not violate any provision of this subchapter.

(3) An order that any person described in paragraph (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.

(4) An order that any person described in paragraph (1) or (2) have no communication whatsoever with any specified witness or victim, except through an attorney under such reasonable restrictions as the court may impose.

18 Pa.C.S.A. § 4954. Under Section 4954, "courts have broad discretion to issue appropriate protective orders." *Commonwealth v. Reese*, 156 A.3d 1250, 1261 (Pa.Super. 2017), *appeal denied*, 643 Pa. 472, 173 A.3d 1109

(2017).

The Crimes Code further describes punishments for violations of Section 4954, as follows:

**§ 4955.  Violation of orders**

**(a) Punishment.**—Any person violating any order made pursuant to section 4954 (relating to protective orders) may be punished in any of the following ways:

(1) For any substantive offense described in this subchapter, where such violation of an order is a violation of any provision of this subchapter.

(2) **As a contempt of the court making such order**.  No finding of contempt shall be a bar to prosecution for a substantive offense under section 2709 (relating to harassment), 2709.1 (relating to stalking), 4952 (relating to intimidation of witnesses or victims) or 4953 (relating to retaliation against witness or victim), but:

   (i)    any person so held in contempt shall be entitled to credit for any punishment imposed therein against any sentence imposed on conviction of said substantive offense; and

   (ii)    any conviction or acquittal for any substantive offense under this title shall be a bar to subsequent punishment for contempt arising out of the same act.

18 Pa.C.S.A. § 4955(a) (emphasis added).  Our Supreme Court has explained:

Contempt of court is unlike other substantive crimes.  The Crimes Code abolished common law crimes, 18 Pa.C.S. § 107(b), but also provided in its preliminary provisions that "[t]his section does not affect the power of a court to declare forfeitures or to punish for contempt or to employ any sanction authorized by law for the enforcement of an order...."  **Id.**, § 107(c).  Further, the United States Supreme Court and this Court have also recognized the principle that courts generally have the authority to punish individuals for acting in contempt.  **See Shillitani v. United**

> *States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622
> (1966); *Commonwealth v. Bowden*, 576 Pa. 151, 838
> A.2d 740, 760 (2003) ("Courts possess an inherent power
> to enforce their orders by way of the power of contempt.").
>
> Moreover, this Court has recognized courts have the power
> to impose summary punishment for criminal contempt.
> *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759,
> 763 (1980). That is not derived from a statute the
> legislature created, but "is a right inherent in courts and is
> incidental to the grant of judicial power under Article 5 of
> our Constitution." *Id.*
>
> Indirect criminal contempt is a violation of a court order that
> occurred outside the court's presence. *Commonwealth v.
> Ashton*, 824 A.2d 1198, 1203 (Pa.Super. 2003). To prove
> indirect criminal contempt, evidence must be sufficient to
> establish: the court's order was definite, clear, specific, and
> leaving no doubt in the person to whom it was addressed of
> the conduct prohibited; the contemnor had notice of the
> order; the act constituting the violation was volitional; and
> the contemnor acted with wrongful intent.
> *Commonwealth v. Baker*, 564 Pa. 192, 766 A.2d 328, 331
> (2001).

*McMullen, supra* at 447, 961 A.2d at 849.

In *McMullen*, the Supreme Court struck down as unconstitutional certain provisions of 42 Pa.C.S.A. § 4136, which described the rights of persons charged with indirect criminal contempt for violation of a restraining order or injunction, and specified punishment a court could impose. *See* 42 Pa.C.S.A. § 4136. Specifically, the Court held that Section 4136(a)(3)(i) was unconstitutional "since it purports to grant a procedural right to a jury trial in all indirect criminal contempt cases involving the violation of a restraining order or injunction." *McMullen, supra* at 446, 961 A.2d at 848. The Court further declared unconstitutional Section 4136(b), which had set forth the

punishments for indirect criminal contempt. *Id.* Significantly, Section

4136(b) had restricted the court's authority to punish for indirect criminal

contempt to a maximum fine of $100.00 and 15 days' imprisonment. *See* 42

Pa.C.S.A. § 4136(b). In declaring the "punishment" subsection

unconstitutional, the Court explained:

> Initially, we note § 4136(b) is not in the Crimes Code, but under Title 42–Judiciary and Judicial Procedure, Chapter 41–Administration of Justice, Sub–Chapter C.-Contempt of Court. We are thus left with a legislative creation of indirect criminal contempt under § 4136. Since courts have the authority to punish individuals in violation of their orders under the case law described above and § 107(c), the legislature cannot create a form of indirect criminal contempt and restrict a court's ability to punish individuals who commit contempt of court. While the legislature generally may determine the appropriate punishment for criminal conduct, indirect criminal contempt is an offense against the court's inherent authority, not necessarily against the public. Section 4136(b) provides maximum penalties the court may impose; thus, § 4136(b) unconstitutionally restricts the court's ability to punish for contempt.
>
> This does not mean the legislature cannot address the behavior prohibited and punished in § 4136. As indicated, the legislature can prohibit certain behaviors by criminalizing them and setting punishments. However, the legislature cannot legislate indirect criminal "contempt," as it is a violation of a court order, which the court inherently has the authority to punish for its violation.

*McMullen, supra* at 447-48, 961 A.2d at 849-50 (internal footnote omitted).

Instantly, in addressing Appellant's assertion that the court convicted

him of contempt under Section 4136, the trial court explained:

> The May 6, 2019 hearing on this matter developed strictly as a result of [A]ppellant's complete disregard and violation

> of a detailed Protective Court Order which this [c]ourt issued on January 16, 2019, specifically directing [A]ppellant to, *inter alia*, stay away from the [Complainant] in this matter. 18 Pa.C.S.A. § 4954 provides for protective Orders that may be issued at any time during a criminal matter, permitting the Judge to prohibit acts of intimidation directed at a witness or victim at locations outside the [c]ourtroom. 18 Pa.C.S.A. § 4955 states that a person violating such an Order may be punished for any substantive crime that has been committed and/or for contempt of [c]ourt. A violation of a protective Order outside the presence of the [c]ourt would be an indirect contempt.
>
> First…, the docket notation of a violation of [Section 4136] is incorrectly noted of record on the docket. Moreover, neither counsel for [A]ppellant, nor counsel for the Commonwealth made any attempt to correct the record nor was it brought up during the course of the proceedings. …

(Rule 1925(a) Opinion, filed December 18, 2019, at 5-6).

The record supports the court's statement that Appellant's contempt conviction arose under Section 4955, and not under Section 4136. On January 16, 2019, the court entered a protective order, directing that Appellant refrain from contacting or intimidating Complainant either personally or by family, friends, agents or acquaintances, and have no contact whatsoever directly or indirectly with Complainant effective January 16, 2019 until final disposition of the case. The order expressly referenced Section 4954 and indicated that any violation would subject Appellant to penalties under Section 4955, which could include a finding of contempt.

The transcripts from the various proceedings that followed make clear that Appellant was obligated to follow the January 16, 2019 protective order, and the court placed further restrictions on the record stemming from that

order due to Appellant's technological savvy and the fact that he operated websites which referenced Complainant. Although the docket entries and sentencing order at docket 96-2019 reference Section 4136, the record supports the court's statements that Appellant's current offense is actually for violating a protective order under Section 4955. As the Court explained in **McMullen**, Section 4136 is not actually a crime. It does not fall under the Crimes Code, but under Title 42—Judiciary and Judicial Procedure, and merely explains the rights of persons charged with certain indirect criminal contempts. **McMullen, supra** at 448, 961 A.2d at 849.

In light of the incorrect references to Section 4136 on the docket entries and sentencing order, however, we remand for the limited purpose of correcting those clerical errors. **See Commonwealth v. Thompson**, 106 A.3d 742, 766 (Pa.Super. 2014), *cert. denied*, ___ U.S. ___, 137 S.Ct. 106, 196 L.Ed.2d 87 (2016) (stating: "A trial court has the inherent, common-law authority to correct clear clerical errors in its orders[; t]his authority exists even after the 30-day time limitation for the modification of orders expires"; remanding for limited purpose of correcting clerical error)

Moreover, Appellant's reliance on **McMullen** is misplaced. The **McMullen** Court made clear that the act of contempt is a violation of a court order, the court has inherent authority to punish for such violations, and the court is not restricted by the punishments outlined in Section 4136(b). **McMullen, supra** at 447-48, 961 A.2d at 849-50. Consequently, the Court's

holding in **McMullen** does not afford Appellant any relief.

Nevertheless, we observe that a different provision of Title 42, on which Appellant relies, also restricts the court's authority to punish for contempt. That Section provides:

> **§ 4133.  Commitment or fine for contempt**
>
> Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court.  All other contempts shall be punished by fine only.

42 Pa.C.S.A. § 4133.[7]  In **McMullen**, the Court recognized that "there is other statutory law concerning contempt," citing 42 Pa.C.S.A. §§ 4132-39, but the Court declined to address the constitutionality of those statutes because only Section 4136 was at issue in the case.  **McMullen, supra** at 448 n.6, 961 A.2d at 850 n.6.

Notwithstanding the Supreme Court's decision to pass on the constitutionality of the remaining contempt provisions, we observe that Section 4133 is not readily distinguishable from the subsections of Section 4136 that the **McMullen** Court declared unconstitutional.  Although Appellant

---

[7] **See also** 42 Pa.C.S.A. § 4132 (stating: "The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases: (1) The official misconduct of the officers of such courts respectively[;] (2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court[;] (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice").

contends the court was authorized to impose only a fine for his indirect criminal contempt[8] under Section 4133, we agree with the Commonwealth's position on appeal that Section 4133 improperly infringes on a court's inherent authority to punish individuals who commit indirect contempt of court.

Like Section 4136(b), Section 4133 is a legislative creation that purports to limit a court's inherent authority to impose punishment for indirect criminal contempt. Thus, in the same manner that the Supreme Court held that the legislature's authority to mete out punishment for criminal conduct against the public under the Crimes Code did not license it to restrict the court's ability to punish for criminal contempt under Section 4136(b), we conclude that Section 4133 is an impermissible encroachment upon the municipal court's inherent power to punish Appellant for his contemptuous conduct. Therefore, the court was not limited to imposing only a fine for Appellant's indirect criminal contempt.[9] *See McMullen, supra* at 455, 961 A.2d at 854 (Castille,

_____

[8] The Commonwealth suggests that Appellant's conduct could be construed as direct criminal contempt because some of Appellant's websites remained active while Appellant was present before the court. We disagree with this position. The court's specific finding of contempt at the May 6, 2019 hearing was based on Appellant's posting of a motivational video on Facebook on April 25, 2019. Appellant made that post outside the presence of the court. Thus, we agree with Appellant and the court that Appellant's conduct constituted indirect criminal contempt. *See Ashton, supra*.

[9] We recognize this Court's decision in *In Interest of E.O.*, 195 A.3d 583 (Pa.Super. 2018), holding that the trial court's sentence of imprisonment for indirect criminal contempt was unlawful under Section 4133. *Id.* at 588. In reaching its holding, this Court acknowledged that Section 4133 appeared to

- 17 -

J., concurring) (stating: "In my view, the General Assembly cannot dictate to the courts what is adequate punishment to vindicate a court's authority. Indeed, to concede such a power would be to allow the General Assembly, in theory, to destroy the judiciary's ability to address contempt: for what would there be to prevent the General Assembly from limiting punishment to something completely toothless such as, for instance, a five dollar fine?"); *Id.* at 456 n.2, 961 A.2d at 855 n.2 (Greenspan, J., concurring) (stating: "One could argue that Section 4133 likewise constitutes an infringement on a court's authority to enforce its own orders. However, that statute is not before us in this case").

In his second issue, Appellant argues that in ***Packingham v. North Carolina***, ___ U.S. ___, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), the United States Supreme Court held that a North Carolina statute prohibiting sex offenders from accessing social networking websites violated the First Amendment of the Constitution. Under ***Packingham***, Appellant asserts the court's order prohibiting him from accessing the internet for 30 days was

_____

conflict with the Supreme Court's holding in ***McMullen***. ***See id.*** at 588 n.9. Because the Supreme Court limited its holding in ***McMullen*** to Section 4136 and because the constitutionality of Section 4133 was not before this Court in ***Interest of E.O.***, however, we declined to invalidate Section 4133. ***Id.***

In this appeal, the Commonwealth expressly calls into question the constitutionality of Section 4133 in light of ***McMullen***. Therefore, our case is procedurally different than ***Interest of E.O.***, and we do not find that case dispositive.

overbroad and violated his constitutional rights. Appellant contends that even if the court's order was content-neutral and subject to intermediate scrutiny, the order cannot stand because it was not narrowly tailored to serve the court's interests of protecting Complainant from harassment. Appellant emphasizes that the court's order did not merely restrict Appellant from accessing social media websites, but it also completely banned Appellant from accessing the internet for 30 days.

Appellant further maintains that nothing in the record shows how a total internet ban would serve the court's purpose of keeping Appellant from contacting Complainant. Appellant stresses that he did not attempt to contact or communicate with Complainant since entry of the court's protective order. Appellant claims that his use of the internet to read newspaper articles or to shop online in no way involves Complainant, and the court's internet restriction was far too broad to satisfy the court's objective of protecting Complainant. Appellant insists the court's internet restriction was particularly egregious because it was part of a pre-trial order when Appellant was presumed innocent and had not been convicted of any crimes. Appellant concludes the court's internet ban was a violation of Appellant's constitutional rights, and this Court should reverse Appellant's contempt conviction and vacate his judgment of sentence. We disagree.

Preliminarily, we observe generally that constitutional challenges are waived on appeal if not properly preserved in the trial court. **Commonwealth**

***v. Berryman***, 649 A.2d 961 (Pa.Super. 1994) (*en banc*), *appeal denied*, 541 Pa. 632, 663 A.2d 685 (1995) (explaining appellate court should not address constitutional issues when they are not properly preserved in trial court for our review). ***See also Commonwealth v. Freeman***, 573 Pa. 532, 548-49 827 A.2d 385, 395 (2003) (explaining general rule that claims or arguments not advanced in trial court are waived on appeal; noting that when claim has not been raised in trial court, record will be devoid of relevant, contemporaneous arguments from trial attorneys, who were in best position to advocate merits of matter when it arose; "[a]fter-the-fact reconstructions, non-record sources, and averments in appellate briefs are distinctly inferior to review of record objections, arguments, and remedial requests actually and timely forwarded and decided by the trial court").

Instantly, Appellant did not mention ***Packingham*** at the time the court imposed the internet restriction at the April 1, 2019 hearing or at the May 6, 2019 contempt hearing. Defense counsel mentioned at the contempt hearing that Appellant had "very strong feelings" about his First Amendment right to post on social media, but neither counsel nor Appellant made any specific argument in support of Appellant's position or elaborated on that comment. In fact, Appellant did not lodge any specific First Amendment claims until he filed his concise statements, which still did not mention the ***Packingham***

decision.[10]  Furthermore, Appellant **agreed** at the April 1, 2019 hearing that he would adhere to the court's 30-day internet restriction.  Under these circumstances, we deem Appellant's second issue waived.  *See Freeman, supra*; *Berryman, supra*.

In his third issue, Appellant argues that on January 4, 2019, the Commonwealth charged him with harassment and stalking, imposed bail, and issued a "stay-away" order as a non-monetary condition of bail.  Appellant asserts that the court imposed a separate, non-monetary bail condition at the April 1, 2019 hearing, when it imposed the 30-day internet restriction. Appellant complains the April 1, 2019 internet restriction was not sufficiently tailored or reasonably related to ensure his compliance with the original "stay-away" provision.  Appellant contends that the purpose of bail conditions is to confirm the accused will appear for trial and to protect victims, witnesses, and the community.  Appellant claims the court's "total" internet ban did not achieve these objectives.  Appellant concludes the court lacked authority to impose the internet restriction at issue as a non-monetary bail condition under

_____

[10] As Appellant did not mention **Packingham** during any of the proceedings before the court or in his concise statements, the court did not analyze that case in its Rule 1925(a) opinion.  **See generally Commonwealth v. Hansley**, 24 A.3d 410 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (explaining that court's review and legal analysis can be fatally impaired when court has to guess at issues raised; if concise statement is too vague, court may find waiver).

Pa.R.Crim.P. 527,[11] and this Court must grant him appropriate relief. We disagree.

Instantly, Appellant mischaracterizes the nature of the court's April 1, 2019 internet restriction. Although Appellant insists the court imposed the internet restriction at issue as a non-monetary condition of bail, the record belies Appellant's claim. As we previously discussed in our analysis of Appellant's first issue, the internet restriction issued at the April 1, 2019 hearing was an extension of the court's earlier January 16, 2019 protective order under Section 4954. Thus, the rules of criminal procedure and cases on which Appellant rely that pertain to conditions of non-monetary bail are inapplicable here. Consequently, Appellant's third issue on appeal merits no relief. Accordingly, we affirm the judgment of sentence but remand for the limited purpose of correcting the clerical errors on the face of the record.

Judgment of sentence affirmed. Case remanded for the correction of clerical errors. Jurisdiction relinquished.

---

[11] **See** Pa.R.Crim.P. 527(A) (stating: "When the bail authority determines that, in addition to the conditions of the bail bond required in every case pursuant to Rule 526(A), nonmonetary conditions of release on bail are necessary, the categories of nonmonetary conditions that the bail authority may impose are: (1) reporting requirements; (2) restrictions on the defendant's travel; and/or (3) any other appropriate conditions designed to ensure the defendant's appearance and compliance with the conditions of the bail bond").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/20/20</u>