J-S14019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID ALLEN, | |
| Appellant | No. 1306 EDA 2014 |

Appeal from the Judgment of Sentence of April 9, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-MD-0000527-2014

BEFORE: DONOHUE, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.: **FILED JUNE 19, 2015**

Appellant, David Allen, appeals from the judgment of sentence entered on April 9, 2014. We affirm Appellant's judgment of sentence, but remand for the correction of a clerical error.

The trial court has ably explained the underlying facts of this case:

> On August 8, 2006, Appellant was arrested and charged with two firearm[s] offenses.[1] [On April 20, 2007, Appellant was held for court on the firearms offenses and the case was transferred from the Philadelphia Municipal Court to the Philadelphia County Court of Common Pleas. The Philadelphia County Court of Common Pleas then issued Appellant a Notice of Trial, commanding Appellant to attend his criminal trial on July 3, 2007. Although Appellant signed

---

[1] The Commonwealth charged Appellant with: 1) firearms not to be carried without a license and 2) carrying firearms on public streets or public property in Philadelphia. 18 Pa.C.S.A. §§ 6106(a)(1) and 6108; *see* Docket Sheet, CP-51-CR-0004857-2007, at 1-9.

the Notice of Trial, Appellant did not appear for his July 3, 2007 trial]. . . .

In fact, Appellant had [failed to appear for trial on other charges] on several prior occasions, necessitating five bench warrants between 1991 and 1992. When Appellant failed to appear [for trial on July 3, 2007, Appellant's] counsel was permitted to accept service on his behalf. A bench warrant was issued at the next hearing on August 15, 2007, when [Appellant] again failed to appear.

Appellant was finally located seven years later and a contempt hearing was held [before Philadelphia County Court of Common Pleas Judge Michael E. Erdos] on April 9, 2014. [During the hearing, d]efense counsel claimed [that] Appellant's lengthy absence was in part because the attorney who had accepted service for Appellant's bench warrant had used an incorrect address [for Appellant]. The address the attorney had used, however, was the address Appellant had given to the police and the one listed in the court system's records. When Appellant was asked why he failed to appear, he stated that he had lost his home after paying bail and that he "forgot about the whole situation." Though he had originally intended to turn himself in, Appellant claimed he forgot to do so once his life had turned around and his grandchildren were born.

Given Appellant's history of failing to appear and the extreme length of his absence, the [trial c]ourt found [] Appellant in contempt of court and sentenced him to three to six months [in jail]. [However, w]hen drafting the sentencing order, the court clerk listed the applicable contempt statute as [42 Pa.C.S.A.] § 4137(a)(2), a provision applying to [magisterial district] judges, instead of [42 Pa.C.S.A.] § 4132(2). . . . The [trial c]ourt mistakenly signed this order on April 9, 2014.

Trial Court Opinion, 7/31/14, at 1. (internal citations omitted).

Appellant filed a timely notice of appeal to this Court. Appellant now lists the following claims in his statement of questions involved on appeal:[2, 3]

> 1. Was not the sentence of [three to six] months' incarceration imposed by [the trial] court after finding Appellant in contempt under 42 Pa.C.S.A. § 4137(a)(2) illegal, as the maximum sentence established by that statute is a fine of no more than $100[.00], **see** 42 Pa.C.S.A. § 4137(a)(2), (c); Pa.R.Crim.P. 140(B)(3)(a)?
>
> 2. Did not the [trial] court err in finding Appellant in contempt under 42 Pa.C.S.A. § 4137 as the conviction cannot be amended post-verdict or post-appeal to any other type of contempt conviction as doing so would violate Appellant's right to due process, including the right to notice, the opportunity to present a defense, and the prohibition on double jeopardy under the United States and the Pennsylvania Constitutions, and because there is no jurisdiction to do so, **see** U.S. Const. Art. V, XIV; Pa. Const. Art. 1 §§ 9, 10; 18 Pa.C.S.A. §§ 109, 110; **Commonwealth v. Campana**, 304 A.2d 432 (Pa. 1973); 42 Pa.C.S.A. § 5505?
>
> 3. Did not the [trial] court, in finding Appellant in contempt under 42 Pa.C.S.A. § 4137(a)(2), violate the requirements of due process, including the right to notice and the opportunity to prepare an adequate defense, under the United States and Pennsylvania Constitutions and Pa.R.Crim.P. 140(B)?
>
> 4. Did not the [trial] court err in finding Appellant in contempt under 42 Pa.C.S.A. § 4137(a)(2) where it violated

---

[2] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, in his Rule 1925(b) statement, Appellant listed the claims that he currently raises on appeal.

[3] For ease of discussion, we have re-ordered and re-numbered Appellant's claims on appeal.

Appellant's statutory right to an automatic stay of the imposition of punishment and the right to *de novo* appeal and Appellant was not advised of these rights, **see** 42 Pa.C.S.A. § 4137(d); Pa.R.Crim.P. 140-141?

5. Would not the [trial] court have erred even if it had convicted Appellant of contempt under 42 Pa.C.S.A. § 4132(3), which it did not, where a contempt finding would [have] violated the requirements of due process under the United States and Pennsylvania Constitutions because Appellant would have been found in contempt for failing to appear for a court date of which he was not served with notice?

6. Would not the [trial] court have erred even if it had convicted Appellant of contempt under 42 Pa.C.S.A. § 4132, which it did not, where the proceedings of the [trial] court in the contempt trial failed to satisfy the requirements of due process, including the right to notice, the opportunity to prepare an adequate defense, and the right to the effective assistance of counsel under the United States and Pennsylvania Constitutions?

7. Was not the evidence insufficient for 42 Pa.C.S.A. § 4137(a)(2) and would not the [trial] court have erred even had it convicted Appellant of contempt under 42 Pa.C.S.A. § 4132(2), which it did not, where the evidence was insufficient to prove the elements of the offense beyond a reasonable doubt because: (1) the order was not definite, clear[,] and specific; (2) Appellant lacked notice of the order; (3) the act was not volitional; and[,] (4) there was no wrongful intent?

Appellant's Brief at 5.[4]

_____

[4] Appellant did not comply with Pennsylvania Rule of Appellate Procedure 2119(a), which requires that the argument section of the brief be "divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). The Commonwealth argues that Appellant's failure to comply with Rule 2119(a) requires that we dismiss the current appeal. Commonwealth's Brief at 6. We remind counsel for the Appellant of the importance of following the Rules of Appellate Procedure in drafting briefs and caution counsel that
*(Footnote Continued Next Page)*

At the outset, we note the distinction between civil and criminal contempt. As our Supreme Court explained:

> There is nothing inherent in a contemptuous act or refusal to act which classifies that act as "criminal" or "civil." The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either [as] criminal contempt, civil contempt, or both.
>
> These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.
>
> Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.
>
> The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging

_(Footnote Continued)_  ───────────

failure to adhere to the rules may result in waiver of issues and/or dismissal of the appeal. However, we will not dismiss this appeal, as Appellant's failure to comply with Rule 2119(a) has not impeded our review of the case. **See** Pa.R.A.P. 105(a) ("[the] rules [of appellate procedure] shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable").

himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally. Second, a court is not permitted to impose a coercive sentence conditioned on the contemnor's performance of some act that is incapable of performance.

*In re Martorano*, 346 A.2d 22, 27-29 (Pa. 1975) (internal citations and footnotes omitted).

Here, the trial court sentenced Appellant to a determinate term of three to six months in jail, to punish Appellant for his willful failure to appear for trial on July 3, 2007. As such, there is no question that the trial court found Appellant guilty of, and sentenced Appellant for, criminal contempt. *See id.*

Further, at this point we note that the trial court found Appellant guilty of **direct** criminal contempt of court. We have explained:

[C]ontempts[, including criminal contempts,] are [] subdivided into direct and indirect contempts. Different procedural safeguards apply to direct and indirect criminal contempts. A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Direct contempt involves conduct occurring in the presence of a court.

*Commonwealth v. Moody*, 46 A.3d 765, 772 (Pa. Super. 2012) (internal quotations and citations omitted), *appeal granted*, 79 A.3d 1093 (Pa. 2013).

As we explained, our courts have interpreted the phrase "in the presence of the court" in a relatively expansive fashion, so that the phrase extends beyond "those acts that the judge sees with his or her own eyes." *Commonwealth v. Brown*, 622 A.2d 946, 948 (Pa. Super. 1993). As summarized:

many prison sentences for direct contempt have been upheld although the act was not committed "in front of" the judge finding the contempt. *See Commonwealth v. Crawford*, 352 A.2d 52 (Pa. 1976) (contemnor stated he would not testify though he did not actually refuse to answer questions in open court); *Commonwealth v. Shaw*, 421 A.2d 1081 (Pa. Super. 1980) (defendant failed to return to court for afternoon session)[; *Rosenberg Appeal*, 142 A.2d 449 (Pa. Super. 1958) (holding that,] in proceedings before a grand jury, a witness' refusal to testify is considered as taking place in the presence of the court[)].

*Brown*, 622 A.2d at 948.

Further, as is pertinent to the current appeal, our Supreme Court has held that two defendants were in direct criminal contempt of court, where "the clerk of courts sent notices to the last known addresses of [the defendants] . . . [,] notifying [them] of the dates for arraignment and the commencement of trial [and] neither [defendant] appeared on the specified dates." *Commonwealth v. Ferrara*, 409 A.2d 407, 410-411 and 412 n.5 (Pa. 1979) ("[the defendants'] contention that they were not given 'fair notice of the charges against them' is without merit since said argument is based on the assumption that their conduct constituted indirect contempt. In fact, [the defendants'] conduct constituted direct contempt"); *see also Commonwealth v. Edwards*, 703 A.2d 1058, 1060 (Pa. Super. 1997) (holding that the "failure to appear in court pursuant to previous court process may [] be considered an act of direct criminal contempt when the person is finally brought to court"); *see also Commonwealth v. Marcone*, 410 A.2d 759, 764 n.5 (Pa. 1980) ("there is authority for finding a deliberate

and unexcused absence by counsel from a scheduled court appearance to be direct contempt. The gravamen of this type of misconduct is the absence which is witnessed by the court").

In view of these decisions, it is apparent that the trial court found Appellant in direct criminal contempt of court, as the trial court found that Appellant willfully "fail[ed] to appear in court [for his July 3, 2007 trial,] pursuant to" the Notice of Trial that was issued by the Philadelphia County Court of Common Pleas and that was signed by Appellant. *See Edwards*, 703 A.2d at 1060; Trial Court Opinion, 7/31/14, at 5 (declaring that Appellant was in contempt of court for failing to appear for trial "at 9:00 a.m. on July 3, 2007"). We will now consider the claims Appellant raises on appeal.

Appellant first claims that his sentence of three to six months in jail was illegal because the trial court found him in contempt under 42 Pa.C.S.A. § 4137 and "the maximum sentence established by [Section 4137(c)] is a fine of no more than $100[.00]." Appellant's Brief at 15. This claim fails because the trial court found Appellant guilty of contempt under 42 Pa.C.S.A. § 4132(2) – and the trial court's citation to 42 Pa.C.S.A. § 4137(a)(2) in the sentencing order constituted a mere clerical error. Nevertheless, since the trial court accidentally cited to 42 Pa.C.S.A. § 4137(a)(2) in the sentencing order, we will remand the case so that the record may be corrected.

We note that "challenges to an illegal sentence can never be waived and may be raised *sua sponte* by this Court." ***Commonwealth v. Tanner***, 61 A.3d 1043, 1046 (Pa. Super. 2013) (internal quotations and citations omitted). "Issues relating to the legality of a sentence are reviewed *de novo*, and our scope of review is plenary." ***Commonwealth v. McKown***, 79 A.3d 678, 691 (Pa. Super. 2013).

As our Supreme Court held, "[t]he power to punish for contempt, including the power to inflict summary punishment, is not derived by statute but rather is a right inherent in courts and is incidental to the grant of judicial power under Article 5 of our Constitution." ***Marcone***, 410 A.2d at 763; ***see also Commonwealth v. McMullen***, 961 A.2d 842, 849 (Pa. 2008) ("[c]ontempt of court is unlike other substantive crimes. The Crimes Code abolished common law crimes, 18 Pa.C.S.A. § 107(b), but also provided in its preliminary provisions that '[t]his section does not affect the power of a court to declare forfeitures or to punish for contempt or to employ any sanction authorized by law for the enforcement of an order'"); ***see also Ex parte Robinson***, 86 U.S. 505, 510 (U.S. 1873) ("[t]he power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice").

Notwithstanding this inherent power, our legislature has sought to define the crime of contempt and regulate the punishment for its

commission. We quote the relevant portions of the statutes that are implicated in this case: 42 Pa.C.S.A. §§ 4132, 4133, and 4137. Section 4132 provides the statutory authority for "the several courts of this Commonwealth" to impose summary punishment for contempts. The statute declares:

> **§ 4132. Attachment and summary punishments for contempts**
>
> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>
> (1) The official misconduct of the officers of such courts respectively.
>
> (2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
>
> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

Section 4133 then declares:

> **§ 4133. Commitment or fine for contempt**
>
> Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

42 Pa.C.S.A. § 4133.

Section 4137 is a separate contempt statute, which specifically applies to magisterial district judges. In relevant part, section 4137 declares:

- 10 -

**§ 4137. Contempt powers of magisterial district judges**

**(a) General rule.--**A magisterial district judge shall have the power to issue attachments and impose summary punishments for criminal contempts of a magisterial district judge court in the following cases:

(1) Misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

(2) Failure of a person to obey lawful process in the nature of a subpoena issued by a magisterial district judge.

(3) Failure to comply with an order of a magisterial district judge directing a defendant in a criminal proceeding to compensate the victim of the criminal conduct for the damage or injury sustained by the victim.

(4) Failure to comply with an order of a magisterial district judge directing a defendant in a criminal proceeding to pay fines and costs in accordance with an installment payment order.

(5) Violation of an order issued pursuant to 23 Pa.C.S.A. § 6110 (relating to emergency relief by minor judiciary).

. . .

**(c) Punishment.--**Punishment for contempt specified in subsection (a)(1) or (3) may be a fine of not more than $100 or imprisonment for not more than 30 days, or both. Punishment for contempt specified in subsection (a)(2) shall be a fine of not more than $100. Failure to pay within a reasonable time could result in imprisonment for not more than ten days. Punishment for contempt specified in subsection (a)(5) shall be in accordance with that specified in 23 Pa.C.S.A. § 6144(b) (relating to contempt for violation of order or agreement). Punishment for contempt in subsection (a)(4) would be imprisonment for not more than 90 days.

**(d) Procedure.--**A magisterial district judge shall have the power to issue an attachment by means of a warrant and to conduct a hearing prior to the imposition of punishment for contempt. Any punishment imposed by a magisterial district judge for contempt shall be automatically stayed for a period of ten days from the date of imposition of the punishment during which time an appeal of the action of the magisterial district judge may be filed with the court of common pleas of the judicial district. The stay shall remain in effect pending the disposition of an appeal. Upon the filing of the appeal, the court of common pleas shall hear the matter *de novo*. On appeal, the accused shall have the right to be notified of the accusation and shall have a reasonable time to make a defense. The defendant shall not have a right to a jury trial on appeal. . . .

42 Pa.C.S.A. § 4137.

In the case at bar, the Philadelphia County Court of Common Pleas[5] convened a hearing and found Appellant in direct criminal contempt because

_____

[5] Although the case received a municipal court docket number and various orders reflect that the case was adjudicated in the municipal court, there is no doubt that the contempt hearing occurred in the Philadelphia County Court of Common Pleas, before Philadelphia County Court of Common Pleas Judge Michael E. Erdos. **See**, **e.g.**, N.T. Contempt Hearing, 4/9/14, at 1 (declaring that the contempt hearing was "In the Court of Common Pleas First Judicial District of Pennsylvania Criminal Trial Division"). Indeed, in **Commonwealth v. Kolansky**, 800 A.2d 937 (Pa. Super. 2002), this Court encountered a similar procedural posture and we held that – although the contempt case was filed on the municipal court docket – the contempt hearing, in fact, occurred before the Philadelphia County Court of Common Pleas and we had jurisdiction over the appeal pursuant to 42 Pa.C.S.A. § 742, which grants this Court jurisdiction over "appeals from final orders of the courts of common pleas." 42 Pa.C.S.A. § 742. Specifically, in **Kolansky**, we explained:

> We note that although Appellant's sentence was filed at Philadelphia Municipal Court No. 01-05-1198, [it] was entered by a Court of Common Pleas Judge as part of a

*(Footnote Continued Next Page)*

Appellant willfully failed to appear for his July 3, 2007 criminal trial, as directed by the Philadelphia County Court of Common Pleas. After considering the plain terms of the above statutes, it is evident that the trial court found Appellant in contempt of court under 42 Pa.C.S.A. § 4132(2), as Appellant's actions constituted a knowing and willful "disobedience . . . to the lawful process of the court" of common pleas. 42 Pa.C.S.A. § 4132(2); *see also* Trial Court Opinion, 7/31/14, at 10 ("Appellant was convicted under § 4132(2)").[6] However, after the trial judge found Appellant guilty of

*(Footnote Continued)* ───────────────

> proceeding incident to a criminal case in the Court of Common Pleas of Philadelphia County. As this Order was entered by a Court of Common Pleas judge, we will address the claims set forth in Appellant's appeal. *See* 42 Pa.C.S.A. § 742.

*Kolansky*, 800 A.2d at 938. Pursuant to *Kolansky*, we hold in the case at bar that, even though Appellant's contempt case was docketed in the municipal court, "Appellant's sentence . . . was entered by a Court of Common Pleas Judge as part of a proceeding incident to a criminal case in the Court of Common Pleas of Philadelphia County" and we have jurisdiction over the appeal, as it is a "final order[ from] the court[] of common pleas." *Kolansky*, 800 A.2d at 938; 42 Pa.C.S.A. § 742.

[6] The trial court also declared that it found Appellant guilty of contempt pursuant to 42 Pa.C.S.A. § 4132(3). Section 4132(3) provides that the courts of the Commonwealth have the power to "impose summary punishments for contempts of court" in cases where there is "[t]he misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." 42 Pa.C.S.A. § 4132(3). However, since we conclude that the trial court properly found Appellant guilty of contempt under Section 4132(2), we need not analyze whether Appellant was also guilty of contempt under Section 4132(3).

criminal contempt and sentenced Appellant (in open court) to a term of three to six months in jail, the trial judge accidentally signed a sentencing order, which declared that Appellant had been found in contempt under 42 Pa.C.S.A. § 4137(a)(2).

Obviously, since Section 4137(a)(2) applies only to magisterial district judges – and since the trial judge was sitting as a judge of the court of common pleas at all relevant times in Appellant's case – the sentencing order was patently incorrect. Nevertheless, on appeal, Appellant claims that the trial court was bound by the sentencing order and, since the sentencing order declares that Appellant was found guilty of contempt under Section 4137(a)(2), "the maximum sentence [Appellant could have been sentenced to under Section 4137(c) was] a fine of no more than $100[.00]." This claim fails.

"A trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders." *Commonwealth v. Thompson*, 106 A.3d 742, 766 (Pa. Super. 2014) (internal corrections omitted), *quoting* *Commonwealth v. Borrin*, 12 A.3d 466, 471 (Pa. Super. 2011) (*en banc*), *affirmed by*, 80 A.3d 1219 (Pa. 2013). "This authority exists even after the 30-day time limitation for the modification of orders expires." *Thompson*,

106 A.3d at 766; **see** 42 Pa.C.S.A. § 5505.[7]   As our Supreme Court

explained:

> [The Pennsylvania Supreme Court has] set a high bar for differentiating between errors that may be corrected under the inherent powers of trial courts, and those that may not, describing correctible errors as those determined to be "patent and obvious mistakes."  The term "clerical error" has been long used by our courts to describe an omission or a statement in the record or an order shown to be inconsistent with what in fact occurred in a case, and, thus, subject to repair. **See**, **e.g.**, **Commonwealth v. Silcox**, 29 A. 105, 106 (Pa. 1894) (upholding the trial court's direction to correct a "clerical" omission and amend the record to state that the defendant was present at every stage of the proceedings); **Commonwealth v. Liscinsky**, 171 A.2d 560, 561 (Pa. Super. 1961) (explaining that the sentencing order contained a "clerical" error subject to correction, as it did not reflect that the trial court specifically stated at sentencing that the sentence it imposed was effective on expiration of defendant's federal sentence); **Commonwealth v. Mount**, 93 A.2d 887, 888 (Pa. Super. 1953) ("Clerical errors" or inaccuracies in docket entries [or orders] may be corrected by the trial court so that they conform to the facts.").

**Commonwealth v. Borrin**, 80 A.3d 1219, 1227-1228 (Pa. 2013).

In **Commonwealth v. Holmes**, 933 A.2d 57 (Pa. 2007), our Supreme

Court expounded upon and defined the "limited class of cases amenable to

the exercise by a trial court of the inherent power to correct patent errors

---

[7] 42 Pa.C.S.A. § 5505 declares:  "[e]xcept as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."  42 Pa.C.S.A. § 5505.

despite the absence of traditional jurisdiction" – which is a class of cases that is confined to those involving "obvious and patent mistakes." ***Commonwealth v. Holmes***, 933 A.2d 57, 65-67 (Pa. 2007).

In ***Holmes***, our Supreme Court considered two companion cases where the trial courts "attempt[ed] to exercise their inherent power to correct orders by vacating illegal sentences despite the expiration of the modification period provided by 42 Pa.C.S.A. § 5505." ***Id.*** at 58. The first of the two ***Holmes*** cases dealt with a parolee named Christopher Holmes. In Mr. Holmes' case, the trial court revoked Mr. Holmes' parole. Yet, instead of recommitting Mr. Holmes to serve the balance of his sentence in prison – as would have been proper for a parole revocation – the trial court resentenced Mr. Holmes as if it had revoked Mr. Holmes' probation. ***Id.*** at 59. Since Mr. Holmes did not have a probationary term that could have been revoked, the trial court's sentence was patently illegal. Nevertheless, Mr. Holmes did not appeal his sentence. ***Id.*** at 59 and 62 n.12.

Almost one year after the trial court entered its judgment of sentence, the trial court realized that it imposed an illegal sentence and *sua sponte* vacated Mr. Holmes' sentence. ***Id.*** at 59-60. The Commonwealth appealed the trial court's order and claimed that the court did not have jurisdiction to correct its earlier sentence because the 30-day time-period for modifying an order – as set forth in 42 Pa.C.S.A. § 5505 – had expired. ***Id.*** at 60.

The companion case in ***Holmes*** concerned a parolee named Rufus Whitfield. In Mr. Whitfield's case, the trial court erroneously believed that

Mr. Whitfield was on probation. *Id.* at 63. Following a revocation proceeding, the trial court entered an order declaring that it was revoking Mr. Whitfield's "probation" and resentencing Mr. Whitfield to a new minimum and maximum term of imprisonment. *Id.* Although it was not apparent on the face of the order, the new sentence was illegal because Mr. Whitfield had never received a sentence of probation for his underlying convictions. Instead, Mr. Whitfield was on parole. *Id.*

Mr. Whitfield filed a timely notice of appeal to this Court. While Mr. Whitfield's appeal was pending, the trial court realized its mistake and *sua sponte* entered an order vacating Mr. Whitfield's sentence. The Commonwealth then filed an appeal from the latter order and claimed that the trial court did not have jurisdiction to vacate its sentence during the pendency of Mr. Whitfield's appeal to the Superior Court. *Id.*

In analyzing the two cases, the Supreme Court acknowledged that the two trial courts lacked "traditional jurisdiction" over their respective cases. *Id.* at 65. As the Supreme Court explained, this lack of "traditional jurisdiction" was grounded in the language of 42 Pa.C.S.A. § 5505 and the fact that "Section 5505 . . . recognizes the removal of jurisdiction [from the trial court] upon appeal as in [Mr.] Whitfield's case . . . and the removal of jurisdiction [from the trial court] upon the end of the term of court or the statutory [30]-day expansion of that time, as in [Mr. Holmes'] case." *Id.* Nevertheless, the *Holmes* Court held that "the limits of jurisdiction enshrined in Section 5505 do not impinge [upon the] time-honored inherent

power of courts" to correct obvious and patent errors in their orders. *Id.* The Supreme Court then held that both Mr. Holmes' and Mr. Whitfield's cases involved such "obvious and patent errors" – and that the trial courts acted properly in correcting the obvious errors in their orders. *Id.*

In Mr. Holmes' case, our Supreme Court held that the obviousness of the illegality was apparent on the face of the sentencing order. *Id.* at 66. This was because the order declared "parole is hereby revoked" but then ordered that Mr. Holmes was to be resentenced to a new minimum and maximum term of imprisonment. Our Supreme Court held that such a sentence was illegal on its face, as "a parole violator cannot be sentenced to a new sentence but instead can only be recommitted to the remainder of the original sentence." *Id.*

In Mr. Whitfield's case, the Supreme Court held that – although "the mistake [was] not apparent [] on the face of the order itself" – the error was still "obvious and patent." *Id.* With respect to Mr. Whitfield, the original order actually declared that the trial court was revoking Mr. Whitfield's probation and the order then resentenced Mr. Whitfield to a new term of imprisonment – as would have been proper for a probation revocation. *Id.* However, Mr. Whitfield had never been sentenced to a probationary term – rather, Mr. Whitfield was on parole. Thus, the error was not apparent on the face of the order. Nevertheless, our Supreme Court still held that the error was "obvious and patent" as "one need only look to the Quarter Session

notes in the record to see" that Mr. Whitfield was "sentenced for violating a probationary term that did not exist." **Id.** at 66 and n.18.

Moreover, and supporting its conclusion in Mr. Whitfield's case, our Supreme Court cited to its earlier opinion in **Commonwealth v. Klein**, 781 A.2d 1133 (Pa. 2001). In **Klein**, the Supreme Court held that the "inherent power" of trial courts to correct patent and obvious errors was not limited to "those errors evident on the face of the order, but rather [extended to] a trial court's correction of a 'patent defect or mistake [that was only made apparent by viewing] **the record**.'" **Holmes**, 933 A.2d at 66 (emphasis in original), *quoting* **Klein**, 781 A.2d at 1135. As summarized by the **Holmes** Court:

> In **Klein**, the trial court sentenced the defendant and credited him with thirty-three days of time served on June 23, 1999. On June 25, 1999, after the prison officials alerted the court to the fact that the defendant had only served one day, the trial court issued an order *sua sponte* directing the Defendant to reappear for re-sentencing on June 30, 1999. Prior to the June 30 re-sentencing, the defendant filed a notice of appeal of the June 23 sentencing order, thus terminating the trial court's jurisdiction. The trial court, on June 30, rejected the defendant's claim that the court did not have jurisdiction, and amended the order to indicate only one day of time served. [The **Klein** Court] on review found the trial court's exercise of jurisdiction appropriate . . . , even though the error was not obvious on the face of the order but emerged only in light of information provided by a third party.

**Holmes**, 933 A.2d at 66.

Thus, in **Holmes**, the Supreme Court held that – as to both Mr. Holmes and Mr. Whitfield – the trial courts possessed the inherent power to

correct the "obvious and patent errors" in their original orders, even absent "traditional jurisdiction" over their cases. *Id.* The **Holmes** Court, however, cautioned:

> Although [Messrs. Holmes and Whitfield] warrant relief under the inherent power of courts to correct patent errors, we must also emphasize the limits of this power. This exception to the general rule of Section 5505 cannot expand to swallow the rule. In applying the exception to the cases at bar, we note that it is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power. Not all illegal sentences will be amenable to correction as patent errors. Moreover, the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient. The cases at bar are not cases where a court reconsidered the application of its sentencing discretion or its interpretation of a nuanced or ambiguous statutory provision. These cases involve clear errors in the imposition of sentences that were incompatible with the record, as in [Mr. Whitfield's case]*,* or black letter law, as in [Mr. Holmes' case]*.* As we have in the past, we emphasize that this is a limited judicial power.

*Id.* at 66-67.

Turning to the case at bar, we agree with the trial court that its citation to 42 Pa.C.S.A. § 4137(a)(2) in the sentencing order constituted a "patent defect or mistake [that was made apparent by viewing] the record." As such, the trial court possesses the inherent power to correct this order, "despite the expiration of the modification period provided by 42 Pa.C.S.A. § 5505." **Holmes**, 933 A.2d at 66.

In this case, there is no question that, at all relevant times, the trial court, the Commonwealth, and Appellant were well aware of: the order that

Appellant was accused of violating; the forum within which Appellant was being tried for contempt; and, the particular type of contempt that Appellant was accused of committing. Specifically, at all relevant times, the trial court, the Commonwealth, and Appellant knew: that Appellant was accused of willfully failing to appear in the Philadelphia County Court of Common Pleas for his July 3, 2007 trial, pursuant to the Notice of Trial that was issued by the Philadelphia County Court of Common Pleas and that was signed by Appellant; that Appellant was being tried for contempt before Philadelphia County Court of Common Pleas Judge Michael E. Erdos, in "the Court of Common Pleas First Judicial District of Pennsylvania Criminal Trial Division;" and, that – since Appellant was being tried for contempt in the Philadelphia County Court of Common Pleas, for violating a trial court order to appear for trial in the Philadelphia County Court of Common Pleas – Appellant stood accused of direct criminal contempt of court under 42 Pa.C.S.A. § 4132(2). There is also no question that, when the trial court found Appellant guilty of contempt and sentenced Appellant, in open court, to a term of three to six months in jail, the trial court found Appellant guilty of – and sentenced Appellant for – direct criminal contempt of court under 42 Pa.C.S.A. § 4132(2). **See also** Trial Court Opinion, 7/31/14, at 10 ("Appellant was convicted under § 4132(2)").

Further, not only did the trial court, the Commonwealth, and Appellant know that Appellant was found guilty of contempt under 4132(2), but the trial court, the Commonwealth, and Appellant also knew that the reference

to 42 Pa.C.S.A. § 4137(a)(2) in the sentencing order was clearly and patently incorrect. Certainly, the record is clear that Appellant could never have been prosecuted for, or found guilty of, contempt under Section 4137(a)(2). Section 4137(a)(2) declares:

> A magisterial district judge shall have the power to issue attachments and impose summary punishments for criminal contempts of a magisterial district judge court in the following cases:
>
> . . .
>
> (2) Failure of a person to obey lawful process in the nature of a subpoena issued by a magisterial district judge.

42 Pa.C.S.A. § 4137(a)(2).

Section 4137(a)(2) is clearly inapplicable to the facts of this case. First, Appellant appeared for his contempt hearing before Philadelphia County Court of Common Pleas Judge Michael E. Erdos – and Judge Erdos is, obviously, not a "magisterial district judge." Indeed, "[a]s of January 1, 1969, the office of magistrate was abolished" in the City of Philadelphia and, on that date, "a new Municipal Court, a court of record, and a new Traffic Court for the City of Philadelphia came into existence." *Glancey v. Casey*, 288 A.2d 812, 814 (Pa. 1972); *see also* Pa.Const. Art. 5, § 6; Pa.Const. Art. 5, Schedule 16(u) ("[t]he office of magistrate, the board of magistrates, and the present traffic court are abolished"). Moreover, as was already discussed, Appellant was well aware that he disobeyed the lawful process of

the Philadelphia County Court of Common Pleas – and not "a subpoena issued by a magisterial district judge." *See* 42 Pa.C.S.A. § 4137(a)(2).

Indeed, the case at bar is no different than one where a defendant was charged with a particular offense, went to trial for (or pleaded guilty to) that particular offense, was convicted of that particular offense, and was sentenced for that particular offense – but the judgment or sentencing order mistakenly declares that the defendant was convicted of a completely different crime. In such a scenario, courts around the nation have held that the error constitutes a patent and obvious clerical error that is subject to correction, even after the trial court loses traditional jurisdiction over the case.[8] In fact, in *Commonwealth v. Young*, 695 A.2d 414 (Pa. Super.

_____

[8] *See*, *e.g.*, *United States v. James*, 642 F.3d 1333, 1343 (11th Cir. 2011) ("[b]ecause the written judgment incorrectly states that James was convicted under [21 U.S.C.] § 841(b)(1)(B)(iii), rather than § 841(b)(1)(C), we remand for the limited purpose of correcting the clerical error"); *United States v. Kilbride*, 584 F.3d 1240, 1259 (9th Cir. 2009) (where the written judgment declared that the defendant's three convictions were Class D and E felonies, but where the record demonstrated that "the jury was not instructed to make the requisite additional factual findings necessary" to cause the convictions to be felonies, the convictions were misdemeanors; thus, "the written judgment's classification of Counts 1 through 3 as Class D and E felonies [constituted] a clerical error requiring remand for correction"); *United States v. Wimbush*, 103 F.3d 968, 970 (11th Cir. 1997) (holding: "[t]he judgment entered in this case indicates that Wimbush was convicted of '18 U.S.C. § 911(g) Possession of a Firearm by a Convicted Felon.' The section reference is a scrivener's error. Section 911 involves the crime of falsely impersonating a federal officer or employee, and that statutory provision has no subsections. Wimbush was actually indicted for, pleaded guilty to, and was convicted of, violating 18 U.S.C. § 922(g), which is the provision prohibiting possession of a firearm by a convicted felon. The sentencing hearing and the arguments in this appeal
*(Footnote Continued Next Page)*

1997), this Court even held that the trial court had the ability to correct a clerical error in the judgment, where the defendant **pleaded guilty** to the wrong subsection of a statute.

In **_Young_**, the defendant sexually assaulted a woman; the Commonwealth charged the defendant with multiple crimes, including simple assault under 18 Pa.C.S.A. § 2701(a)(1), indecent assault under 18

_(Footnote Continued)_ ───────────────

concern that firearm offense, not any § 911 offense. The judgment should be amended accordingly, and we remand for that limited purpose"); **_United States v. McNeal_**, 932 F.2d 1255, 1255 (8th Cir. 1991) ("McNeal also argues the district court illegally imposed the special parole term because the district court sentenced him under 21 U.S.C. § 841(b)(1)(A), which makes no provision for special parole. In ruling on McNeal's motion, the district court recognized it had actually sentenced McNeal under 21 U.S.C. § 841(b)(1)(B), which requires a special parole term, rather than under subsection (b)(1)(A), as the judgment stated. The district court corrected the judgment by changing the statutory reference to 21 U.S.C. § 841(b)(1)(B), and denied McNeal's motion. We agree with the Government that the district court's mistake was a clerical one, and the district court properly denied McNeal's motion to correct his sentence"); **_Costello v. United States_**, 252 F.2d 750, 751 (5th Cir. 1958) (where the factfinder found the defendant guilty of Count 1 and Count 3, but the written judgment "described the offenses as charged in Count 1 and the withdrawn Count 2, rather than as charged in Count 1 and Count 3," the error constituted "a mere clerical mistake in the judgment which may be corrected by the district court at any time"); **_see also State v. Benson_**, 822 N.W.2d 484, 487 n.2 (Wis.App. 2012) ("[a]t the plea hearing, the circuit court referenced and Benson pled to the elements for homicide by intoxicated use of a vehicle, causing the death of an unborn child, contrary to [W.S.A.] § 940.09(1)(c). The amended judgment of conviction, however, incorrectly states that Benson was convicted under subsection (1)(a). This is a clerical error . . . [and] we remand to the circuit court with directions that the amended judgment of conviction be amended to reference the correct statute subsection").

Pa.C.S.A. § 3126(a)(1), and indecent assault under 18 Pa.C.S.A. § 3126(a)(4). *Young*, 695 A.2d at 416. At the time, the relevant subsections of the indecent assault statute read as follows:

> (a) Offense defined.-A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him, is guilty of indecent assault if:
>
> (1) he does so without the consent of the other person;
>
> . . .
>
> (4) he has substantially impaired the other person's power to appraise or control his or her conduct by administering or employing, without the knowledge of the other[,] drugs, intoxicants or other means for the purpose of preventing resistance.

18 Pa.C.S.A. § 3126(a)(1) and (4) (1994); *Young*, 695 A.2d at 418.

The Commonwealth's information listed the simple assault charge as "Count 1," the Section 3126(a)(1) indecent assault charge as "Count 2," and the Section 3126(a)(4) indecent assault charge as "Count 3." *Young*, 695 A.2d at 418. However, in describing Count 3, the information merely declared:

> THE DEFENDANT DID, on or about APRIL 10, 1994, in the County aforesaid, have indecent contact with [G.L.], not his spouse, or caused [G.L.] to have indecent contact with him, in violation of 18 Pa.C.S.A. § 3126(a)(4). Grading: M2.

*Id.* at 418 n.6. As this Court noted, the above declaration was "not a complete recitation of the elements of the offense of indecent assault as defined in 18 Pa.C.S.A. § 3126(a)(4)," as Section 3126(a)(4) "also requires

- 25 -

the defendant to have administered drugs or intoxicants to the victim to prevent that person's resistance to the indecent contact." **Id.**

On September 13, 1994, the defendant entered an open guilty plea to "Count 1 Simple Assault 18 Pa.C.S.A. § 2701(a)(1)" and "Count 3 Indecent Assault 18 Pa.C.S.A. § 3126(a)(4);" in exchange, the Commonwealth dismissed the remaining charges, including Count 2 (indecent assault under Section 3126(a)(1)).  **Young**, 695 A.2d at 416 and 418 (quotations in original) (internal corrections omitted).  However, in the defendant's written plea colloquy, the written form incorrectly listed the elements of Count 3 as "knowingly, has indecent contact w/another, not his spouse w/out consent of the other person."  **Id.** at 418.  In other words, we explained, "[the defendant's written] guilty plea colloquy defined Count 3 as if it [were] actually Count 2 of the [information]."  **Id.** at 418-419.  Moreover, during the guilty plea hearing, the oral summary of the facts corresponded with indecent assault under Section 3126(a)(1) – not Section 3126(a)(4).  **Id.** at 419 ("the summary of the facts indicate[d] that [the defendant] actually intended to plead guilty to indecent assault as defined by Count 2 of the [information], not Count 3") (emphasis omitted).  The trial court sentenced the defendant on Counts 1 and 3; the defendant did not thereafter file a notice of appeal to this Court.  **Id.** at 416 and 419.

A little less than one year after the defendant's judgment of sentence became final, the defendant filed a PCRA petition.  Within the petition, the defendant claimed that his plea was unknowing and involuntary because

"the facts elicited during the plea colloquy did not match the crime to which [defendant] pleaded guilty." *Id.* at 416. The PCRA court granted the defendant relief and the Commonwealth appealed to this Court. *Id.* On appeal, we reversed the PCRA court's order. We held that the defendant's guilty plea to Count 3 (indecent assault under 18 Pa.C.S.A. § 3126(a)(4)) constituted a clerical error – and that the defendant, in fact, pleaded guilty to Count 2 (indecent assault under 18 Pa.C.S.A. § 3126(a)(1)). *Id.* at 419-420. We thus corrected the clerical error by "substituting Count 2 of the [information] for Count 3." *Id.* at 420. As we explained:

> [the defendant] was charged with two counts of indecent assault, Count 2 which required indecent contact without the consent of the victim, and Count 3 which required the defendant to have drugged his victim. The facts elicited throughout the proceedings below were consistent with a prosecution for indecent assault as defined by Count 2 of the indictment, and [the defendant] knowingly and voluntarily admitted to acts which violated Count 2 of the indictment. The problem before us, however, was created when the lower court, the prosecution and defense counsel committed, in essence, a clerical error by permitting [the defendant] to plead guilty to the wrong sub-section of the indecent assault statute.
>
> We do not believe that such an error is tantamount to manifest injustice. [The defendant] was charged in Count 2 with violating 18 Pa.C.S.A. § 3126(a)(1), and he voluntarily admitted to facts which constituted that charge. The fact that [the] judgment of sentence indicates that [the defendant] pleaded guilty and was sentenced on Count 3, 18 Pa.C.S.A. § 3126(a)(4), does not affect the voluntariness of [the defendant's] plea where there was no confusion as to his commission of Count 2. [The defendant] intended to plead guilty to indecent assault as defined by 18 Pa.C.S.A. § 3126(a)(1), and we will not permit him to withdraw his plea simply because the trial court, his counsel and the

- 27 -

prosecution failed to insure that [the defendant] pleaded guilty to the correct count of the indictment.

Presently, the PCRA court should have corrected the clerical error of counsel and the trial court which permitted the judgment of sentence to indicate that [the defendant] had been sentenced on indecent assault as defined by Count 3, rather than by Count 2. . . . The power to modify a judgment of sentence to amend records, to correct mistakes of court officers or counsel's inadvertencies is inherent in our court system, even after the thirty-day time limit set forth in 42 Pa.C.S.A. § 5505 has expired. . . . Thus, we will herein correct the clerical error which appears on the face of the judgment of sentence by setting forth the correct sub-section of the indecent assault statute, *i.e.*, substituting Count 2 of the indictment for Count 3.

*Id.* at 419-420 (internal footnotes and some citations omitted).

In the case at bar, the trial court, the Commonwealth, and Appellant well aware of the fact that Appellant was charged with, convicted of, and sentenced for direct criminal contempt under 42 Pa.C.S.A. § 4132(2); they were also well aware of the fact that Appellant was not – and could not have been – prosecuted for or found guilty of violating 42 Pa.C.S.A. § 4137(a)(2). Thus, in accordance with our opinion in **Young**, the weight of our nation's jurisprudence (which considers a discrepancy between the written judgment and the offense for which the defendant was, in fact, convicted of and sentenced for to be a clerical error), and our Supreme Court's opinions in **Klein** and **Holmes**, we conclude that the trial court's reference to Section 4137(a)(2) in the sentencing order constitutes a "patent defect or mistake [that was made apparent by viewing] the record." **Holmes**, 933 A.2d at 66 (emphasis omitted), *quoting* **Klein**, 781 A.2d at 1135. Hence, the trial court

possesses the inherent power to correct this order, "despite the expiration of the modification period provided by 42 Pa.C.S.A. § 5505." We thus remand the case, so that the trial court may correct the clerical error in the record. Moreover, in light of our holding that Appellant was convicted of and sentenced for contempt under 42 Pa.C.S.A. § 4132(2), we conclude that Appellant's first claim on appeal – that his sentence of three to six months in jail was illegal because the trial court found him in contempt under 42 Pa.C.S.A. § 4137 and "the maximum sentence established by [Section 4137(c)] is a fine of no more than $100[.00]" – fails.

Further, since we concluded that Appellant was convicted of direct criminal contempt under 42 Pa.C.S.A. § 4132(2) – and that the trial court's reference to 42 Pa.C.S.A. § 4137(a)(2) in the record constituted a clerical error – we conclude that Appellant's second, third, fourth, and fifth numbered claims on appeal necessarily fail.[9]

_____

[9] According to Appellant's second claim, the record "cannot be amended post-verdict or post-appeal to any other type of contempt conviction as doing so would violate Appellant's right to due process . . . and the prohibition on double jeopardy." Appellant's Brief at 4 and 20. However, since Appellant was charged with, convicted of, and sentenced for contempt under 42 Pa.C.S.A. § 4132(2) – and since the reference to 42 Pa.C.S.A. § 4137(a)(2) in the record constituted a clerical error – the correction of the clerical error will neither violate Appellant's right to due process nor implicate the double jeopardy clause of either the United States or the Pennsylvania Constitution.

Appellant's third and fourth numbered claims on appeal are premised upon the belief that he was convicted of contempt under 42 Pa.C.S.A. § 4137(a)(2), which, this Court has concluded, is false. **See** Appellant's
*(Footnote Continued Next Page)*

Within Appellant's sixth numbered claim on appeal, Appellant claims that he "received no notice that he was charged with criminal contempt until the very moment that the trial commenced." Appellant's Brief at 16 and 24. Therefore, Appellant claims, "in finding Appellant in contempt under [§ 4132(2)], the [trial] court violated Appellant's right to due process, including his right to notice and the opportunity to prepare an adequate defense." Appellant's Brief at 16 and 24. This claim is waived, as Appellant did not raise the claim before the trial court and Appellant did not otherwise object to the contempt proceedings in the trial court. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Kennedy*, 959 A.2d 916, 924-925 (Pa. 2008) (in capital murder case, where "mitigation counsel did not request a continuance . . . or otherwise object[] to the trial date," Appellant waived claim that "counsel was in need of additional time" to prepare for the penalty phase); *see also Moody*, 46 A.3d at 772 ("[d]irect criminal contempt often requires immediate adjudication in the form of a

_____
*(Footnote Continued)* ――――――――――

Brief at 4-5. As such, Appellant's third and fourth numbered claims on appeal fail.

Finally, Appellant's fifth numbered claim on appeal contends that his direct criminal contempt conviction under 42 Pa.C.S.A. § 4132(3) was erroneous. However, since we conclude that Appellant was properly convicted of direct criminal contempt under 42 Pa.C.S.A. § 4132(2), we will not consider Appellant's claim regarding 42 Pa.C.S.A. § 4132(3).

summary hearing. . . . Due process requirements necessarily are truncated in summary proceedings. Summary proceedings for contempt of court are those in which the adjudication omits the usual steps of the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial") (internal quotations and citations omitted).[10]

Finally, Appellant claims that the evidence was insufficient to find him in contempt under § 4132(2) because, during the contempt hearing, Appellant presented evidence that – after he failed to appear for his July 3,

_____

[10] In **Commonwealth v. Edwards**, 703 A.2d 1058 (Pa. Super. 1997) and **Commonwealth v. Pruitt**, 764 A.2d 569 (Pa. Super. 2000), this Court held that the appellants had not waived their due process claims on appeal, even though the appellants failed to object to the direct criminal contempt proceedings. However, the **Edwards** and **Pruitt** courts forgave the potential waiver because the appellants simply did not have an opportunity to object to the proceedings. Indeed, in both cases, the trial courts pronounced the appellants in contempt of court without providing them with any notice that they were even facing a contempt conviction. **See Edwards**, 703 A.2d at 1060 n.2 (trial court found the appellants in contempt following a "perfunctory" hearing that failed to provide the appellants with "any adequate notice that [they] were being subjected to contempt proceedings"); **Pruitt**, 764 A.2d at 576 ("[n]owhere during the proceedings leading up to the court's imposition of a fine did the court mention that it considered [a]ppellant's conduct to be contemptuous"). However, in the case at bar, Appellant admits that he knew he was charged with criminal contempt before the contempt hearing began. Appellant's Brief at 16. Thus, since Appellant knew that he was charged with contempt before the contempt hearing – and since Appellant was represented by counsel at the contempt hearing – Appellant was provided with an opportunity to object to the proceedings. Appellant's failure to object has thus caused the waiver of his due process claim on appeal.

2007 trial – the subsequent bench warrants were mailed to a different address than the one where he resided. This claim fails automatically, as the trial court found Appellant in contempt for willfully **failing to appear in court for his July 3, 2007 trial**, pursuant to the **Notice of Trial** that was issued by the Philadelphia County Court of Common Pleas and that was **signed** by Appellant. *See* Trial Court Opinion, 7/31/14, at 5 ("the Notice of Trial signed by Appellant, directing him to appear at 9:00 a.m. on July 3, 2007, was definite, clear, and specific, satisfying . . . § 4132(2). In fact, it would be difficult to find a clearer order. Further[], as Appellant signed this notice, he cannot claim that he had no notice or knowledge of it").

Judgment of sentence affirmed. Case remanded for the correction of a clerical error. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/2015